Opinion of the court, by
Judge Sherman :
The complainant set up an equitable title to a house and lot, in the city of Cincinnati, for which the defendant, Jerusha Hatch, heretofore recovered a judgment, in ejectment, against him.in this court (1 Ohio, 390), and seeks a conveyance of the legal title, and a perpetual injunction of that judgment. The questions, which have been made, necessarily lead to an examination of the facts of the case. The Miami Exporting Company, on June 18,1821, were indebted to the complainant, then a resident of Baltimore, about fifteen thousand dollars, for the notes of the company before that *497 time deposited with them. And William Barr and John Sterrett then the general agents of John T. Barr, with authority to collect and receive his debts, but without a special authority to take lands, and one of them a director of the company, agreed with the board of directors to take the house and lot in question, with other real estate, for ten thousand seven hundred and sixty dollars, being all the *lands then owned by the company in fee. On the same day the board of directors, by a resolution, authorized and directed O. M. Spencer, their president, to execute a deed in fee simple, with covenants of general warranty, to the complainant for the real estate so sold, and Spencer did the same day, in pursuance of that resolution, execute a deed of conveyance for the land, which was immediately recorded, and the complainant’s agent gave-a check for the amount of the consideration money, and thereby discharged so much of the debt owing by the company to J. T. Barr. At the time this arrangement took place, the Miami Exporting Company were justly indebted to the State of Ohio about nine' thousand dollars, and legal process had been served on them, by which it was expected that judgment would be, as in fact it was, obtained, at the June term of the Supreme Court, commencing on the 15th. Upon this judgment execution issued, was levied on the-house and lot in controversy, and sold to the defendant, Jerusha Hatch, on November 25, 1821, for two hundred and fifty dollars. At the time of the sale, upon execution, the agent of the complainant attended and gave notice to the agent of the defendant, J. Hatch,, and others present, that the complainant owned the property and had a deed therefor from the Miami Exporting Company. The company continued in the possession of part of the house, it being their banking house, from the sale to Barr, to August, 1823, without any written lease, but under a parol agreement with the agents of complainants as to their rent.
At the time the order to execute a deed was made by the board of directors, they authorized their president to execute a bond to complainant, that if he should reconvey the property within one year, they would place the amount of the consideration money to his credit upon their books.
In July, 1823, the defendant, J. Hatch, commenced an action of ejectment for the house and lot in question, against the complainant, and recovered judgment, in consequence of the defective ex *498 ecution of the deed to the complainant, by the agent of the Miami Exporting Company.
It is shown that a fear that the property might be sacrificed, by sale upon execution, under the judgment about to be obtained by the state, was a moving cause with the company, for entering into the arrangement for the sale to Barr.
*The general principle that courts of chancery may supply any defect in the .execution of a power, whether that defect arises from mistake, accident, or ignorance, is not questioned. Whenever the intention to execute a power is sufficiently manifest, but the execution is defective, or it has not been executed according to the terms, or in the form prescribed, equity will correct the mistake or supply the defect. When nothing has been done, or attempted to be done, toward the execution of a power, equity, in general, will not interfere, unless the instrument creating the power shall have vested, or recognized, in third persons, rights to secure which the execution of the power is necessary. If the attorney or agent has attempted to execute the power, but has done it defectively, the party claiming under it can not avail himself of it, at law; equity interposes its aid, upon the broad principle •of relieving against accident or mistake.
It is also a well-settled rule, that when an instrument, intended as a deed to convey lands, has not been so executed as to pass the estate, or vest a legal title, equity has considered it a contract for .a deed, and decreed, if the consideration has been paid, the title to be perfected.
Upon either of these grounds the complainant would be entitled, as against the Miami Exporting Company, to the relief sought. Nor do they resist it, as they have neglected to answer, and permitted the bill to be taken as confessed against them. The defendant, J. Hatch (the only defendant who has answered the bill), however, contends, that the sale to Barr, by the Miami Exporting ‘Company, was fraudulent and void as against their creditors, and that her equity is equal to Barr’s, and a court of chancery will not deprive her of any legal advantage she may have fairly obtained.
There can be no doubt that the defendant, J. Hatch, under the judgment in favor of the state, can protect herself in the same .mannei*, and to the same extent, that the judgment creditor could, had he purchased. If the sale to Barr was fraudulent and void, *499 as against the judgment creditor, it is fraudulent and void as against the purchaser at sheriff’s sale under such judgment. Any other rule would compel the judgment creditor to become the purchaser, or deprive him of the benefit of his judgment and execution. No prudent person would purchase, at sheriff’s sale, property previously ^conveyed by the judgment debtor, however apparent or gross the fraud attending such conveyance might be, if he was to be separated from the rights of the judgment creditor, and could not avail himself of them to protect his purchase. It is true, as has been stated in argument, that the purchaser, under execution, holds as purchaser, and not as judgment creditor. But he holds with the benefit of the judgment lien. If a debtor alien his lands, with the intent, and for the purpose of defrauding his creditors, such alienation, as against such creditors, is void, and the estate is considered as remaining in the debtor for all purposes beneficial to the creditor. It may be attached, if the debtor abscond; is subject to the lien of a judgment ; and is in every way liable to be appropriated to the payment of the creditor, in the same manner as if no conveyance had been made. The purchaser at sheriff’s sale acquires all the right, title, and interest in the land which the debtor had at the commencement of the judgment lien ; is vested with the rights of the creditor; entitled to the same relief, and can protect his title against the frauds of the judgment debtor in the some manner, and to the same extent, that the judgment creditor might have done had he purchased. 2 Johns. Ch. 36.
It is contended that the circumstances attendant upon, and connected with the sale to Barr, show that it was fraudulent as to the creditors of the Miami Exporting Company, and the defendant insists that the proofs establish the following facts, upon which she relies either as badges of fraud, or as amounting to fraud in law :
First. That it was in the intention of the parties to hinder or delay the state in the collection of its debts.
Second. That the grantor was largely indebted in a suit pending, and judgment about to be obtained at the time of the conveyance.
Third. The conveyance was of all the estate of the debtor liable to execution.
Fourth. The grantor remained in possession after the deed, *500 and contrary to its terms, and upon no obligatory or definite lease.
As the question of fraud must, in a great degree, depend upon a minute and careful examination and comparison of the proofs and exhibits in the cause, and upon giving to *eaeh circumstance its due weight, it can scarcely be expected that the court should detail each particular fact that may have influenced their judgment, especially when there is no probability that a case attended with /the same circumstances will again occur. Such a. detail would be tedious as well as useless. It will be sufficient to notice the prominent facts and circumstances.
First. It is said that it was the intention of the parties to hinder and delay the state in the collection of its debt. If the proofs of the case clearly made out the fact that the sale to Barr was a contrivance to delay or obstruct the state in the collection of its debt, it would be difficult to avoid the conclusion that it was fraudulent. But we are not satisfied that such was the intent of the parties. Spencer, the president of the company, states in-his testimony that a fear that the property might be sacrificed by a forced sale, under the judgment about to be obtained by the state, was one moving cause for the bank to make the sale to the complainant. It appears that his agents knew of the pendency of the suit, and one of them was-then a director of the company. On the other hand, it is clearly shown that the company were .then, and had been for a long time, largely indebted to Barr, who was anxious to obtain payment, which they were unable to make in cash ; that his agents offered to take the property at its full cash value, and did, in fact, allow about eight thousand dollars for the house and lot- now in dispute. The. agents of Barr endeavored to secure the debt due him, but there is no circumstance warranting the belief that they were influenced by the wish to hinder or delay the state. The Miami Exporting Company were then in such a situation that they could not reasonably expect to retain the property, and if it should be exposed to sale, for what it would command in cash, as it necessarily must have been upon the judgment in favor gf the-state, there was a moral certainty, considering the situation of the country at that time, that it would bring but a small portion of its actual value. That the company should fear a sacrifice of a groat part of the value of the property, if sold upon execution, is probable, and that they should be influenced by that fear to accept. *501 the proposition of another creditor to allow them the full value, is equally probable, and does not indicate a fraudulent intention to hinder *or delay the state in the collection of its debt. The sale to Barr might, and probably did, produce the effect of •delaying the state in the collection of its debt, but it does not appear that that was the object the company had in view. Their intention appears to have been to make the best disposition in their power of their property for the payment of their debts, and we •can conceive nothing immoral or unjust in an individual or corporation so circumstanced that- their property must soon be sold for what it will bring in cash, conveying it to a creditor for its full value, although moved to make such conveyance by the fear of or the wish to avoid sacrifice. It is not any disposition of his property, by a debtor, that produces the effect of hindering or obstructing the creditor in the collection of his debt that is fraudulent, but it is the intent with which the disposition is made that gives a character to the transaction. If the object of the parties be to obstruct or hinder the creditor, and a conveyance is made for ¡this purpose, such conveyance is fraudulent and void, although a full consideration be paid. But such fraudulent intent ought to be clearly shown, especially when the conveyance is made to a •creditor in satisfaction of a just debt and for a full consideration. In Wills v. Franklin, 1 Bin. 513, it was held to be neither immoral nor unfair to prevent a creditor, after suit brought, from obtaining a priority by his judgment. In Hendrick v. Robinson, 2 Johns. Ch. 283, the chancellor, after citing and examining many of the English eases on the subject, comes to the conclusion that a debtor, in failing circumstances, may make a deed or assignment to one creditor of all his property, although it produces the effect •of delaying or hindering all other creditors, when such was not fraudulent in its inception or intention.
It is also contended that the grantor, being largely indebted, and a suit pending ready for judgment at the time of the conveyance to Barr, furnishes strong evidence of fraud. It was said in Twyne’s case, 3 Coke, 80, and has since been repeatedly recognized that the pendency of suit, at the time of making sale of goods, was a badge of fraud. This, like every other badge or indicium of fraud, while it remains unexplained, is a circumstance from which courts are warranted in presuming there is some concealed or secret trust in favor of the vendor, or that it is a mere *502 contrivance to * cover up the property from the creditors. Pendency of suit does not, of itself, make any alienation by the debtor void, but when such alienation is of all, or nearly all of the debtor’s property, it may furnish a strong presumption that such sale was mere pretense and contrivance to avoid payment. When the sale is made to a creditor, in payment of a debt, admitted to be justly due and for a full and fair price, and the debt discharged, all the presumption of fraud arising from the pendency of suit by another creditor is removed. In this case the testimony clearly shows that the sale to Barr was not made with the intent of withdrawing the property of the company from the payment of their debts, but for the purpose of discharging, to the full amount of its value, the claims of perhaps a favored creditor.
Third. The same observations are applicable to the objection that the conveyance was of all the estate of the debtor liable to execution. This is also, as is said in Twyne’s case, a mark or sign of fraud, a circumstance from which, if unexplained, courts are warranted in presuming that the sale was made for the use of the vendor, and to conceal the property from creditors; but when all the circumstances attending the sale show that the intent of the parties was legal and honest-, that the property sold was not of greater value than the debt discharged, all presumption of fraud, arising from the fact that the conveyance embraced all the estate of the debtor liable to execution, is repelled. There is a class of cases in the English reports where their courts have held that an assignment, by a person subject to their bankrupt laws, in contemplation of bankruptcy, of all or nearly all of his effects, is a fraud upon those laws, as a contrivance to avoid their effect. These decisions go upon the ground that creditors trust to those-laws for an equal distribution in ease of the misfortune of the debtor; that the whole object of those laws is to secure the management of the property of an insolvent debtor, by third persons, and to insure a pro rata distribution, and that both of these objects would be defeated, by permitting a debtor, on the eve and in contemplation of bankruptcy, to give priority to one or more creditors, by assigning his effects. Yet there an assignment is held valid, if made at the solicitation of a creditor, to pay or secure ajust debt, although a debtor was at the time insolvent, and contemplated *an act of bankruptcy, and the effect is to prevent an equal distribution of the property of the insolvent debtor, *503 thereby defeating the policy of the bankrupt laws. Those cases, and the principles upon which they are decided, have no application where bankrupt laws are unknown, and neither courts of law nor equity possess the power of preventing a failing debtor from giving preference to particular creditors, when there is no fraud or collusion. But the sale to Barr was not a general transfer of' all the property of the company, but a conveyance of certain parcels of real estate, being then ail owned by them in fee. There is no evidence of the amount or value of personal property, if any,, then owned by the company, or the amount due then upon note, bond, or mortgage. The fair presumption is, that it was collectively oí much greater amount than the judgment in favor of the1 state. Banks do not, usually, even if not prevented by statute, vest any great portion of their funds in real estate, nor do the holders of bank paper ordinarily look to such property as furnishing the means of payment. By the provisions of certain statutes of our legislature, in force at the time the state obtained judgment, all debts due a bank — notes and every other description of property owned by them — could be reached by legal process, and their whole funds in the hands of their agents or officers, and all mortgages and trust estates held by them, could be subjected to the payment of their debts. It can not, therefore, be justly said that the conveyance to Barr was of all the property of the company liable to execution, when they possessed funds to a great amount liable to be taken, at the option of the creditor, by a special legal process, and sold or appropriated for the satisfaction of his demand.
It is contended that the conveyance of the house and lot in question, by the company, and remaining in possession after the deed contrary to its terms, and upon no obligatory or definite lease, is a fraud per se against the creditors, and as to them the estate did not pass by the deed. It is unnecessary, in this case, to inquire, whether retaining possession of chattels after sale by a debtor, is as to creditors a fraud per se, or merely evidence of fraud, to be considered in connection with all the other circumstances, to ascertain whether there was fraud in fact. There are numerous highly respectable ^authorities on this question, directly conflicting with each other, but I have not been able to find a case, where it has been judicially determined-that a sale and conveyance of lands was to be deemed absolutely fraudulent *504 in law, against creditors, because the grantor retained possession after the deed. It is true, there is a dictum of Lord Rosslyn’s to that effect, in the case of Bates v. Graves, 2 Ves. Jr. 292, but it was no way material to the decision of the cause, nor is any authority cited, or reason given to support it; and the observation of the chancellor, if reported correctly, is merely used arguendo. In Hildrith v. Sands, 2 John. Ch. 46, Chancellor Kent relied on the fact of the grantors remaining for many years in possession, without paying rent, and making improvements, among the other -circumstances of the case, as evidence that the sale was fraudulent; but it does not appear to have occurred to the counsel or court, in that case, that the grantors, retaining possession of the lands, after the sale, was a fraud per se. The reasons given, why the possession of goods by the vendor, after the sale, should be'considered as a fraud per se, are, that the public have no means of ascertaining the ownership of goods, but by the possession, and that the vendor, if the goods are left in his possession, will be enabled thereby to obtain credit and impose upon the community. But the reasons fail when applied to lands, the title of which does not rest in parol, nor is it evidenced by possession, but can only be conveyed by deed executed in a particular manner, which the grantee, if he would insure his title, must place upon record, in a public office, open to the inspection of the world. Nor can any serious apprehensions be justly entertained, that the grantor of lands, by retaining possession, will be thereby enabled to obtain a false credit. That the possession of real estate, by the grantor, after an absolute conveyance, may justly be considered as a circumstance tending to raise the presumption of fraud, is undoubtedly correct; but that it does not of itself amount to fraud, and thereby vacate the conveyance, and prevent the estate from passing, is, we think, equally clear. It must be taken in connection with all the circumstances of the case, and if those circumstances rebut any presumption of fraud arising from the possession of the lands remaining in the grantor, the deed can not justly be pronounced inoperative and void.
*In this case, however, the testimony shows that the legal possession was changed. The company, who were still engaged in banking business, rented by parol a part of the house containing their vault and other accommodations necessary to the transaction of their business, and thereby'became the tenants of Barr, *505 ■‘holding part of the property as such and paying rent therefor. It is immaterial to inquire whether this contrast to lease, being by parol, could have been enforced under our statute of frauds and -perjuries. If it should be admitted that neither party could havo sustained a bill to enforce a specific execution of this contract, yet, as tbo parties did execute it, it created the relation of landlord and tenant between them, and the possession of the company was legally the possession of Barr, as effectually as .if they had held it by virtue of a valid written lease. All presumption of actual fraud derived from the possession, by the company, of part of the property conveyed, is repelled by the proofs in the cause. The .amount actually paid by Barr by discharging so much of the debt due him, the immediate recording of the deed, the going into possession of part, leasing the residue by parol, all show that on his part the purchase was bona fide, and, independent of the positive testimony of the officers of the company, their acts after the sale show that they considered the complainant the owner and landlord of the whole, themselves as tenants for a part only.
It has also been supposed that the resolution of the board of •directors, authorizing a bond to be given to the complainant to place the amount of the consideration money to his credit, if within one year he reconveyed the property to the company, furnishes a strong presumption of fraud, or of a secret trust in favor of the grantor. This transaction is wholly unexplained by the proofs in the cause. No such bond was executed, nor does it appear that it was required by the agents of Barr, or that they, in fact, had any knowledge of such a resolution of the board of directors. The fair presumption is that it was passed by the directors to be. used by their agent, if necessary, to induce the agent of the complainant to agree to receive the property at the price affixed by the board, and affording him, if desired by his agents, the means of rescinding the contract should he be dissatisfied ^with it. Barr was a merchant residing in the city of Baltimore; and it might not be desirable to him to invest so large an amount as ten thousand dollars in real estate in the western country, especially at a time when real estate was much depressed in value, and it was very difficult to convert it into cash. But whatever might have been the motives of the directors in adopting this resolution, it does not appear, either from the resolution itself, or other testimony, that it was designed to create any secret trust in *506 their favor, or in any way to deceive and defraud. Their conduct is rationally accounted for by believing their intention to be to-sell this property for its full value in payment of their debts, even though such sale was conditional in favor of the purchaser, rather than leave it to be taken by the first judgment creditor, and sold at public auction for what it would bring in cash. This resolution does not purport on its face that there shall be reserved to the-company any right or privilege to redeem, but the option is to be given to the purchaser of reconveying within a given time, and thereupon the bank are to place the amount of the purchase money to his credit upon their books. Nothing was done under this resolution by which either party acquired any rights, or became subject to any obligations, and we can not perceive that the circumstance of vesting the president of the company with a discretionary power, which was never exercised and never could be to the benefit of the bank, taints the transaction with fraud, or conduces in the least to show the existence of a secret trust.
The court are satisfied upon a careful examination of all the circumstances connected with the sale to Barr, that it was fair and bona fide free from the taint of fraud, and not upon any secret or concealed trust; that the sale was made to a creditor for a full and fair price actually paid, by discharging so much of the debt due him by the vendor; that the deed was executed in an open public manner, and immediately placed upon record, and that it was owing to a mistake in the execution that it was prevented from having full effect' at law; that the complainant is entitled to the-aid of this court to have this mistake corrected against the defendant, J. Hatch, who purchased with full notice of the sale to Barr, unless her equity, standing in place of the state, is equal to the complainant’s.
*It has already been observed that the defendant, J. Hatch, having purchased under the judgment in favor of the state, can protect her title in the same manner and to the same extent that the state could, had the purchase been made by the state in the character of judgment creditor. She acquired by the sheriff’s deed all the title and interest of the judgment debtor in the lands at the time the judgment lien attached, with all the rights incident to or growing out of that lien. A creditor acquires no interest in, claim to, or lien upon the lands of his debtor, by suing out legal process to enforce the collection o his debt, and until *507 judgment they remain free to be aliened by the debtor. If the debtor convey his lands for the purpose of defrauding his creditors, such conveyance is void as to them, whether suit be pending against him or not; but if it be fair and bona fide it is valid and operative, although suit be pending and ripe for judgment. The lien of the judgment in favor of the state did not attach to the lands of the Miami Exporting Company until June 15, 1821, and anterior to that time she stood in the relation of a general creditor of the company. But on the 8th of that month, the complainant purchased the property now in dispute for a valuable consideration actually paid, by extinguishing so much of the debt due him, and thereby acquired such an equity in this property as is known, recognized, and protected in a court of chancery. The deed from the Miami Exporting Company, although so defectively executed as not to pass the legal estate, is, in equity, treated as at least equal to a contract to convey, and for many purposes is considered as an actual conveyance. The intention of the parties doubtless was to execute to the complainants a perfect present conveyance in fee of the land, on June 8, 1821, and he was entitled on that day to such conveyance; and equity, acting on the broad principle of considering that as done which ought to be done, will, as between the parties and all others claiming as volunteers, or purchasers with notice, decree as though the conveyance had been executed by the parties-in the terms and at the time intended or agreed.
In Wadsworth v. Wendell, 6 Johns. Ch. 224, Kent, Chancellor, decided that an instrument purporting to be a conveyance by a soldier of his bounty lands, but which, in fact, had no seal affixed, and was executed before the issuing *of the patent, was defective as a legal conveyance, but passed the interest of the grantor in equity, and entitled the grantee to relief against a subsequent purchaser, who was chargeable with constructive notice of such defective conveyance. In this case, the chancellor, after reviewing many of the authorities, states the doctrine as too well established, and too just in itself to admit of any doubt that a defective conveyance binds the lands in equity against the heir of the grantor, any subsequent voluntary grantee, or subsequent pur-, chaser, with notice of the equitable title of the plaintiff. In Sugden on Yendors, 481, it is stated, as the result of all the authorities, that a purchaser, by a defective conveyance, will be assisted *508 In equity against heirs or assignees of a bankrupt, all persons claiming with notice, and creditors who did not rely upon the land as their primary security, though they have obtained an advantage at law. It is undoubtedly true, as a general principle, that when the equity of the parties is equal, courts of chancery will not interfere to deprive either party of a legal advantage he may have obtained; but this rule is only applicable when the •equitj jt the parties is not only equal, but is such as is known and recognized in courts of chancery, and by this rule, so understood, the rights of the parties to the property in dispute must be tested.
The equity of Barr, on the day the defective deed was executed and delivered to him, was that of a purchaser of the property in ■question for a full and fair price, entitling him to a perfect conveyance, while the equity of the state was that of a general creditor of the grantor, seeking satisfaction of his debt, an equity that attached itself to no particular part of the property of the debtor, or gave the creditor any interest in or lien upon the lands of such debtor; and would not be recognized in this court, unless special circumstances rendered it necessary to resort here to aid in enforcing payment. It can not, therefore, be justly said that the equity ■of the parties was equal, on June 8, 1821, or that the complainant .acquired by his purchase no other equitable rights than those of a general creditor. Anterior to that time both the state and the •complainant were general creditors of the Miami Exporting Company, having no specific lien upon any property, and their equity, if equity *it can be called, was to have payment of their debts; but on that day the complainant became a purchaser, and was, thenceforth, in equity, vested with the rights resulting from this new relation, although the conveyance to him was so defectively executed as not to pass the legal estate.' The defendant, J. Hatch, having purchased at sheriff’s sale, under a judgment, the lien of which commenced subsequent to the conveyance to the complainant, and with a knowledge of that conveyance and its contents, is not entitled, in good conscience, to retain the legal advantage he acquired by the sheriff’s deed, against the elder and superior equity of the complainant.
I have not thought it necessary to consider what would have been the effect of the claim of the complainant, if, instead of beicoming a purchaser, he had taken a mortgage as collateral security, *509 so defectively executed that he could not avail himself of it at law. There is certainly a difference between that case and the one before' the court; but whether that difference would prevent the eourtfrom correcting the mistake, or supplying the defect in the execu- - tion of such mortgage, as against other creditors of the mortgagor,. I will not pretend to say. In case a mortgage had been given, the-relation of debtor and creditor would have subsisted between the' parties; the debt would have remained, upon which suit might be-brought, judgment obtained, and other property of the judgment debtor taken in execution; but, by the purchase made by the complainant, ten thousand seven hundred and sixty dollars of his debt was paid and extinguished, and as to that sum, the company no longer remained his debtor.
Decree for complainant, etc.