1822.

SEYMOUR
v.
DELANCEY.

===

SEYMOUR *against* DELANCEY and others.

A specific performance of a contract of sale is not a matter of course, but rests entirely in the discretion of the Court, upon a view of all the circumstances.

Though mere *inadequacy of price*, independent of other circumstances, is not, of itself, sufficient to set aside a transaction; yet it may be sufficient to induce the Court to stay the exercise of its discretionary power to enforce a specific performance of a private contract for the sale of land, and to leave the party to seek his compensation in damages, at law; especially, where the inadequacy of price is so great, (being *half* the value,) as to give to the contract the character of unreasonableness, inequality and hardship.

*June 8th, and August 7th.*

BILL, filed *March* 14th, 1821, for a specific performance of an agreement for the exchange of certain lots in the village of *Newburgh*, for two farms, one in the town of *Montgomery*, and the other in the town of *Wallkill*, made the 14th of *January*, 1820, between the plaintiff and *Thomas Ellison*, now deceased. The defendant *D.*, was the son-in-law of *T. E.*, and the other defendants were his infant children.

The cause was brought to a hearing on the pleadings and proofs, the 8th of *June*, 1822.

*B. Robinson*, and *J. Duer*, for the plaintiff. They cited *Gilb. Rep.* 155. 1 *Bro.* 156. 9 *Vesey*, 246. 18 *Vesey*, 19. 3 *Vesey & Beam.* 187. 10 *Vesey*, 292. 471.

*Betts*, for the defendants. He cited 1 *Vesey*, sen. 279. 7 *Vesey*, jr. 32. 34. 10 *Vesey*, 292. Sir *Samuel Romilly*, arguendo. 18 *Vesey*, 10. 1 *Madd. Rep.* 1. *and note.* 3 *Atk.* 386, *Prec. Ch.* 538. *Cases temp. Talbot*, 234. 2 *Bro. P. C.* 296. *Bac. Abr.* tit. *Agreement.* 3 *Harris & M'Henry's Rep.* 324. *Osgood* v. *Franklin*, 2 *Johns. Ch. Rep.* 1.

THE CHANCELLOR. The question in this case is, whether it be fit and proper, under all the circumstances, to decree a specific performance of the contract of sale.

The main objection to the exercise of this power of the Court, in the present case, is the great inadequacy of price which the plaintiff was to allow for the two farms, of which he seeks title.

By the articles of agreement, *Thomas Ellison*, the ancestor of the defendants, was to convey, by the first of *June*, 1820, two farms, lying in the towns of *Montgomery* and *Wallkill*, in *Orange* county, and containing, in the whole, 763 acres of land, and the plaintiff was to give, in exchange, the one equal undivided third part of two lots of land, in the village of *Newburgh*. The agreement was executed the 14th of *January*, 1820, and, by the terms of it, each party was at liberty to take possession of the estate to be conveyed to him, and to receive the profits to his own use ; and it is in proof, that each party did enter into possession, on the execution of the agreement.

The witnesses differ greatly in their estimates of the value of these respective pieces of land. I think, the weight of testimony fixes the value of the village lots, (I

mean the plaintiff's interest in them,) at the date of the agreement, at about 5000 dollars, and of the two farms at about 14,000. This is the best conclusion which I can draw from a comparison of the various estimates, touching the relative value of the different parcels of land, proposed to be exchanged. There was this difference in value, or rather this inadequacy of price, which the plaintiff was to give for two farms, lying in the heart of *Orange* county. He was to give 5000 dollars for two farms, worth 14,000 dollars. But if we consider the judgment of each witness to be of equal weight in the scale, and give equal credit to the witnesses who value the village lots, and the country farms, at the two extremes of price, the difference between the average value of each will not be 9000 dollars, but only 6348 dollars. If we take the average value as given by the plaintiff's witnesses only, the difference is 5441 dollars. If we select out six of the plaintiff's witnesses, who put the highest value on the village lots, and six of the defendant's witnesses who value the country farms the lowest, we shall still have a difference of upwards of 2,300 dollars in value, in favour of the country farms. It is impossible to be precise in ascertaining the difference in value between the lands of the two parties, but I am satisfied, that at the date of the agreement, the village lots were not worth half the value of the country farms ; and we should make an ample advance of the one, and an ample diminution of the other, in value, if we were to fix the one third of the *Newburgh* lots at 6000 dollars, and the farms at 12,000 dollars.

The question then recurs, is it the dictate of sound legal discretion, that this agreement should be specifically carried into execution by the authority of this Court? It is an application to sound discretion. This has been the uniform language of the Courts of equity. It is not a case requiring the aid of the Court *ex debito justiciæ.* It is a settled principle, that a specific performance of a contract of sale is not a matter of course, but rests entirely in the

discretion of the Court, upon a view of all the circumstances. " The jurisdiction," as Lord *Eldon* observed, (12 *Vesey*, 331.) " is not compulsory upon the Court, but the subject of discretion. The question is, not what the Court must do, but what it may do under the circumstances." A Court of equity must be satisfied, that the claim for a deed is fair and just, and reasonable, and the contract equal in all its parts, and founded on an adequate consideration, before it will interpose with this extraordinary assistance. If there be any well founded objection on any of these grounds, the practice of the Court is to leave the party to his remedy at law for a compensation in damages.

Lord *Somers*, more than a century ago, stated the check that existed to the exercise of this extraordinary jurisdiction, when he observed, in the case of *the Marquis of Normandy* v. *Lord Berkley*, (cited in 5 *Viner*, 539.) that the Court would not carry an agreement into execution unless the contract was *reasonable and fair in every particular*, because Courts of equity cannot mitigate damages upon the circumstances of the case, as a jury may do, but must decree the whole contract to be performed. This doctrine was sanctioned by Lord *Macclesfield*, in *Young* v. *Clerk*; (*Prec. in Ch.* 538.) and he refused to decree the specific performance of articles concerning land, when there was a great undervalue, and the contract appeared to be unreasonable, though good in law; but dismissed the bill, and left the party to his legal remedy for damages. Several cases are cited (1 *Maddock's Ch. Rep.* 9. note.) from the MS. tables of Lord *Harcourt*, in support of the established maxim, that equity will not carry hard or unreasonable agreements into execution. One of these cases, (*Squire* v. *Baker*, decided in 1726, and cited also in 5 *Viner*, 549. pl. 12.) the Court expressly took the distinction, and would not execute an unreasonable agreement, but yet allowed the party to make the most of it at law. Afterwards, in *Savage* v. *Taylor*, which was decided by Lord

1822.

SEYMOUR
v.
DELANCEY.

The specific performance of a contract for the sale of land, rests in the discretion of the Court, upon a view of all the circumstances.

Opinion of Lord *Somers*.

Lord *Macclesfield*.

Lord *Harcourt*. Equity will not carry hard or unreasonable agreements into execution; but the party is left to his remedy at law.

*Talbot*, in 1736, (*Cases temp. Talbot*, 234.) the discretion-ary power of the Court over the subject was declared, and the distinction taken between the power of setting aside the contract and decreeing its execution. The Lord Chancel-lor said, that if it appeared the articles were unfairly ob-tained, though not to such a degree as to set them aside, *Lord Talbot's* yet the Court would not order a performance, but would *opinion.* leave the plaintiff to his remedy at law ; and even if *posses-sion had been given under the articles*, it would not alter the case, or help the claim to a specific performance.

These cases show the antiquity of the doctrine of the Court, and that the power of awarding the specific execu-tion of contracts for the sale of land, rested in sound judi-cial discretion, and was not to be applied to cases that were hard, or unfair, or unreasonable, or founded on very inadequate considerations.

In the case of *Thompson* v. *Harcourt*, (2 *Bro. P. C.* 415.) a cross bill was filed in the Exchequer, in 1721, for the specific performance of a contract concerning stock, and the bill was dismissed, and the decree affirmed in Par-liament, on the ground of the great inequality of the agree-ment, to pay 9200 pounds, for that which was not worth 1000 pounds, *at the time of performance.* The agreement was deemed a hard one, though fairly made, without fraud, surprise or ignorance.

This principle received continual approbation, and more full and clear illustration, in the various cases in which it was afterwards applied. It was established with great authority, and with great precision, in the time of Lord *Hardwicke.*

*Lord Hard-* In *Barnadiston* v. *Lingwood*, (2 *Atk.* 133.) Lord *Hard-*
*wicke.* *wicke* said, that in a case of a hard bargain, that was exe-cutory only, the constant rule of the Court was not to carry it into execution. Again, in *Baxter* v. *Lister*, (3 *Atk.* 385.) he observed, that nothing was better established in Chancery, than that every agreement or contract of sale

ought to be certain, fair and just, in all its parts, and if any of those ingredients were wanting in the case, the Court would not decree a specific performance. It was in the discretion of the Court, whether they would decree a specific performance, otherwise a decree might be made, which would tend to the ruin of one party. So again, in *Joynes* v. *Statham*, (3 *Atk*. 388.) Lord *Hardwicke* observed, that it was the constant doctrine of the Court, that it was in its discretion, whether upon such a bill they will decree a specific performance, or leave the plaintiff to his remedy at law. The same doctrine was explicitly announced in the subsequent cases of the *City of London* v. *Nash*, and of *Underwood* v. *Hithcox*, (1 *Vesey*, 12. 279.) The first of these cases was a bill for a specific performance ; and Lord *H*. said, the Court was not obliged to decree a specific performance, and would not, where it would be a hardship. In the latter case, he observed, that the Court was not bound to decree every agreement entered into, though it was in strictness of law for a valuable consideration. It depended upon the circumstances. Undoubtedly, every agreement, of which there should be a specific performance, ought to be fair in all its parts, and for adequate consideration. The specific execution of the agreement, to sell a copyhold estate in fee, was denied in the latter case, on the single ground of the inadequate consideration.

The last case which I shall cite, from the decisions of Lord *Hardwicke*, is that of *Faine* v. *Brown*, (cited in *Ramsden* v. *Hylton*, 2 *Vesey*, 304.) decided in *December*, 1750. A person owned a small estate, which had been left him by will, on condition that if he sold it in 25 years, half the purchase money should go to his brother, and he agreed in writing to sell it, and afterwards refused to carry that agreement into execution, pretending to have been intoxicated with liquor at the time. A bill was brought to compel execution of the agreement; and Lord *H*. said,

that without the other circumstances, *the hardship alone of losing half the purchase money*, if carried into execution, was sufficient to determine the discretion of the Court not to interfere, but to leave them to law. This case is the same in principle, as if the party, without being subject to any such onerous condition, had sold for half the value; and this, like the case preceding it, is an instance in which inadequacy of price alone is sufficient to prevent the specific execution of an agreement to sell land. This case was cited by Lord *Manners*, in *Revell* v. *Hussey*, (2 *Ball & Beatty*, 287.) to show that a contract, unreasonable at the time of entering into it, will not be enforced.

Lord *Alvanley's* opinion.

The case of *Day* v. *Newman*, (2 *Cox*, 77.) came before Lord *Alvanley*, in 1788; and there was an agreement in writing for the purchase of an estate for 20,000 pounds, which was proved not to be worth above 10,000 pounds. There were no circumstances of fraud or surprise in the case, and he thought the inadequacy of price alone was sufficient not to induce him to decree a specific performance. He held it to be a foolish bargain, made by the parties with their eyes open; and he followed the distinction taken by Lord *Talbot*, and which is sustained through all the books; and held, that though the agreement was not to be executed, it was not to be delivered up and cancelled; and the original bill for a specific performance, and the cross bill for cancelling the articles, were both dismissed.

It is difficult to reconcile this decree with one made by the Court of Exchequer, in the same year, in the case of *Collier* v. *Brown*, (1 *Cox*, 428.) where it was held, on a bill for specific performance, that if the parties bargained with their eyes open, and without imposition or surprise, mere inadequacy of price was not, of itself, sufficient to prevent the Court from administering its usual equity. But, in that case, the inadequacy of price was less than half, as the price agreed on was £275, and the seller was,

in a few weeks afterwards, offered £400; and the Court observed, that the seller was " very well satisfied with her bargain, until she found she could get more for the premises, and *that, under those circumstances*, mere inadequacy of price was not sufficient." So that, it seems, the case did not disclose any very great hardship; and the rule was laid down too generally, and contrary, as we have seen, to the current of authority. The ground of the decision ought to have been expressly placed, as I suspect it was intended to place it, on the special circumstances of that case; and it certainly is not to be compared, considering the loose and brief language of the Court, in weight of authority, to the concurrent decision of Lord *Alvanley*, which went precisely, and at large, upon the specific and single objection of the great inadequacy of price. The opinion of the Court of Exchequer, was declared differently, three years afterwards, in *Tilly* v. *Peers*, (cited from MS. by Sir *Samuel Romilly*, in 10 *Vesey*, 301.) where Chief Baron *Eyre* said, that the Court, upon the mere consideration of its being so hard a bargain, will not enforce it; and Baron *Thompson* observed, also, that " if there was no circumstance of fraud, the plaintiff would not have been entitled to relief. *The consideration was not one third of the value.*"

If, then, there was any thing in the case of *Collier* v. *Brown*, to disturb the harmony of the adjudged cases which had preceded it, that difficulty was entirely removed by this subsequent decision.

The doctrine involved in this inquiry, has been repeatedly brought into discussion since the time of Lord *Eldon*, and it will be instructive to examine the most material of the late cases on the point.

In *White* v. *Damon*, (7 *Vesey*, 30.) Lord *Eldon* was inclined to say, that a sale by auction could not be set aside for mere inadequacy of price. This was an auction case, which undoubtedly rests on peculiar grounds, and the

1822.

SEYMOUR
v.
DELANCEY.

Opinion of Lord *Eldon*. Sales *at auction*, cannot be set aside, for mere inadequacy of price.

**1822.**

*SEYMOUR*
*v.*
*DELANCEY.*

Chancellor spoke of *setting aside* the sale. So far, the case has no application. Lord *Rosslyn* had, indeed, dismissed the bill brought in that very case, for specific performance of the purchase, merely as being a bad bargain, from inadequacy of value, as the price was £1120, and the value £2000. Lord *Eldon* was inclined to question, and, I think, properly, the decision on that ground, in the case of a sale at auction, but he did not overrule Lord *Rosslyn*. The cause went off on another point ; and the case shows the decided opinion of Lord *Rosslyn*, that in other contracts of sale, specific performance may and will be refused, on the single ground of inadequacy of price. Afterwards, in *Coles* v. *Trecothick*, (9 *Vesey*, 246.) Lord *Eldon* observed, that inadequacy of price, unless it amounted to conclusive evidence of fraud, was not, itself, a sufficient ground for refusing a specific performance of an agreement to sell land ; but this was the case of a sale at auction ; and I put these auction sales entirely out of the consideration of the question before me.

The subject underwent a very full and able discussion, in *Mortlock* v. *Buller*, (10 *Vesey*, 292.) which was also a bill for the specific performance of a contract for the sale of an estate. The question, whether performance ought to be denied upon the single ground of great inadequacy of consideration, was much considered ; the Lord Chancellor gave no opinion upon the doctrine of inadequacy of value, and said, he did not mean to decide upon it, though he treated the rule as not now to be questioned, and as perfectly settled, that the Court was not bound to decree a specific performance in every case, where it will not set aside the contract, nor to set aside every contract that it will not specifically perform. So, he afterwards observed, in *Willan* v. *Willan*, (16 *Vesey*, 83.) that " there were many cases in which the Court would not disturb an agreement that has been executed, though it would have refused to carry that agreement into execution ;

*Opinion of*
*Lord Rosslyn.*

*Lord Eldon.*

and there were also many cases upon the other point, where, refusing to execute an agreement, it will leave the party to make the most of it at law, where the jury may determine upon all the circumstances, what shall or shall not be given as damages; and there is a third class of cases, in which the Court, refusing to carry the agreement into execution, would not stand neuter, but would order it to be delivered up."

In *Western* v. *Russell*, (3 *Ves. & Bea.* 187.) the bill was against the heir of the vendor, for a specific performance of a contract to sell, and the defence was gross inadequacy of consideration. The Master of the Rolls said, that it was not necessary to determine the general question, whether inadequacy of price might not be a ground for refusing performance; and he decided that case upon its special circumstances, and held, that as the vendor was not alleged to be under any incapacity, or deficiency of judgment, and set his own price, and obtained it, and lived a year and a half after the completion of the bargain, and never expressed any dissatisfaction, but accused the purchaser of delay, the agreement ought to be carried into execution.

It will be observed, that in these later cases, there is a doubt thrown over the question, whether inadequacy of price alone, though not so great as to be evidence of fraud, will be sufficient, in any case, and without any other ingredient, as infirmity of mind, surprise, &c. to withhold the decree for a specific performance. But, after so much recognition of the general doctrine, that equity will not enforce hard, or unreasonable, or unequal bargains, but rather leave them to a jury at law, to mitigate or apportion the damages, as the justice of the case shall appear; after the decisions in *Young* v. *Clark, Underwood* v. *Hithcox, Faine* v. *Brown,* and *Day* v. *Newman,* on the very point of inadequacy; and, after what was said by Baron *Thompson,* in *Tilly* v. *Peers;* and, after Lord

1822.

SEYMOUR
v.
DELANCEY.

*Rosslyn's* decision in *White* v. *Damon*, on that very point, also ; I do not perceive the necessity or even the propriety of that doubt and distrust, if not disapprobation, which Lord *Eldon*, and the Master of the Rolls, have been pleased to express.  There is a very great weight of authority against enforcing a contract, where the consideration is so inadequate as to render it a hard bargain, and an unequal and an unreasonable bargain ; the argument is exceedingly strong against it in such cases, when it is considered that if equity acts at all, it must act *ex vigore*, and carry the contract into execution, with unmitigated severity : Whereas, if the party be sent to law, to submit his case to a jury, relief can be afforded in damages, with a moderation agreeable to equity and good conscience, and when the claims and pretensions of each party can be duly attended to, and be admitted to govern the assessment. This same reason appears to have been clearly perceived and strongly felt by Lord *Somers* and Lord *Eldon*, in their reflections on this very point ; and it is surprising, that the rule should be unsettled, after it has so frequently occurred, and when more than the space of a century intervened between the decisions of these distinguished men.

Though mere *inadequacy of price*, is not, of itself, sufficient to set aside a sale of land ; yet it is sufficient to induce the Court to refuse to decree *a specific performance* of a private contract of sale of land, and to leave the party to his remedy at law.

I conclude, then, that inadequacy of price may, of itself, and without fraud or other ingredient, be sufficient to stay the application of the power of this Court to *enforce* a specific performance of a private contract to sell land ; though it may be true, as the Lord Ch. Baron said, in *Griffith* v. *Spratley*, (1 *Bro.* 179. *note.*) that mere inadequacy of price, independent of other circumstances, is not sufficient to *set aside* the transaction.  In the present case, the inadequacy is so great as to give the character of hardship, unreasonableness and inequality to the contract, and to render it discreet and proper, under the established principles of the Court, to refuse to decree a specific performance, and to leave the plaintiff to seek his compensation in damages at law.

The civil law went far beyond the English law on this subject, and a contract for the sale of land was rescinded by judicial authority, though made in good faith, if the price was below half the value. *Minus autem pretium esse videtur, si nec dimidia pars veri pretii soluta sit.* (*Code* 4. 44. 2.) This was the law in *France* before the revolution. (*Pothier, Traité des Obl.* n. 34. *Traité du Cont. de Vente*, n. 330.) Though by the *Napoleon Code*, (n. 1674.) the ratio is fixed at 7-12ths below the real value.

If it were to be granted that an inadequacy, great as that in the present case, was not sufficient to stay the powers of the Court, without the weight of some additional ingredient, we have that ingredient in this case.

*Ellison*, the ancestor of the defendants, was, in the last year or two of his life, rendered, for a considerable part of his time, unfit for business, by habitual intoxication. His mind must have felt the pernicious effects of that habit, and have lost its original strength, when he made the bargain in question. The proof is abundantly sufficient, to render the fact of his competency to contract, with the requisite judgment, doubtful. One of the witnesses says, that for the greater part of the last two years of his life, he was incompetent. The answer sets up this defence, in terms sufficiently intelligible to admit the proof, and to prevent the objection of surprise. It states, that for some time previous to his death, he was occasionally incapable of attending to business. The contract was made in *January*, and he died in *August*, 1820 ; and this language is, perhaps, as direct and explicit as children could have been inclined to use, and it was no doubt well understood by the plaintiff, for the habitual intoxication of *Ellison* appears to have been a matter of public notoriety in the village of *Newburgh*. This fact adds greatly to the force of the considerations growing out of the inadequacy of the price, and is clearly sufficient, within the view of all the cases, to render it highly discreet and just to refuse the aid of the

*1822.*

SEYMOUR
v.
DELANCEY.

Rule of the
civil law.

1822.

SEYMOUR
v.
DELANCEY.

Court to a specific performance of so hard and so extra-vagant a bargain, gained from an habitual drunkard, in the last year of his life, and just before his infirmities had begun to incapacitate him entirely for business.

There is another circumstance in the case which ought to be taken into consideration, when the plaintiff comes here seeking a specific performance. He was not in a condition to give a good title to the village lots, either when he contracted, or when the deeds were to be exchanged, or at the time of the death of *Ellison*. The lots were under mortgage for 5000 dollars, which I consider as their full value, and that mortgage was not redeemed until after *Ellison's* death. The plaintiff was in default on the first of *June*, 1820. He ought to have shown himself able and ready to convey on that day. One of his witnesses, who is a physician, says, that *Ellison*, from *June* to within a week of his death, was competent in mind to do business. The plaintiff shows no sufficient excuse for his want of readiness and ability; and I cannot but persuade myself, after having examined most of the *English* cases, that the united force of the circumstances of this case would have overcome the scruples of the most cautious mind that has ever investigated and expressed any opinion on the subject; and that a bill with so much fact against the equity of the claim, has never been sustained.

I have not heard or examined proof as to the competency of the plaintiff, now, to make a title. It was not necessary; and where a case of specific performance turns upon that point, it is the usual course of the Court, to refer the inquiry, as to title, to a master.

I am, consequently, of opinion, that the bill be dismissed, without costs.

The following decree was entered:

"It is declared, that from the great inadequacy in value of the lots in the village of *N.*, which the plaintiff contracted to convey to *E.*, deceased, for the two farms in

the county of *O.*, which the said *T. E.* contracted to convey to the plaintiff, and also from the habits of intoxication in which the said *T. E.* had indulged, in the last years of his life, and the mental debility produced thereby, and also from the want of readiness and ability in the plaintiff to convey a good and unincumbered title to the said lots, at the time fixed for the performance of the said contract, or at any time thereafter during the life of the said *T. E.*, the articles of agreement mentioned in the pleadings ought not in equity and good conscience be decreed to be carried into specific execution by the defendants. It is, thereupon, ordered, &c. that the bill be dismissed, without costs."