WILLIAM RIDGEWAY AND WIFE
vs.                                    SEPTEMBER TERM, 1850.
STEPHEN TORAM.

[JURISDICTION—CHANCERY PRACTICE—REMEDY AT LAW—SUPPLEMENTAL BILLS
IN THE NATURE OF BILLS OF REVIEW.]

A BILL in equity can be filed to enforce the vendor's lien, only when the complainant has exhausted his remedy at law, or when he avers in his bill, such facts as will show that he cannot have a full, complete, and adequate remedy at law.

The question of jurisdiction, depends exclusively upon the case made by the bill, and in determining the question whether this court can or cannot grant relief, recourse cannot be had to the statements of the answer, or to any other part of the proceedings.

It is a settled rule, even in the case of deeds, that if there be a condition precedent, and it is not performed, and the parties proceed with the performance of other parts of the contract, although the deed cannot take effect, the law will raise an implied assumpsit, upon which an action of assumpsit can be maintained.

The bill in this case was dismissed upon the ground that it did not make a case giving the court jurisdiction, because there were no allegations showing, either that the complainants had no remedy at law, or having such remedy, had exhausted it.

A petition asking leave to file a supplemental bill in the nature of a bill of review, may be filed at any time before the decree is enrolled.

In this state, there is no formal rule for the publication of testimony, as in England, but objections to the evidence are taken and considered at the hearing.

If the parties at any time before the hearing, should discover new evidence, they will, upon application, be allowed to take it, and if such new evidence requires the bill to be amended, an order for that purpose will be passed, or perhaps it may be amended, and a supplemental bill filed without an order, as a matter of course.

On an application for leave to file a supplemental bill in the nature of a bill of review, it is not enough that the new facts were not known before the hear-

ing, but it must appear, that the party could not have known them by use of reasonable diligence, for any laches or negligence in this respect, destroys the title to relief.

The imperfection in an original bill rendering a supplemental bill necessary, may arise either from the *importance* of the omitted fact not being previously understood, *or from the fact itself* not having come to the knowledge of the party until after the bill was filed.

But, a party will not be allowed to file a supplemental bill *in the nature of a bill of review*, upon the ground that the importance of newly discovered evidence, was not understood until the decree had passed, when such evidence was known to him, or might have been known, by the use of reasonable diligence, in time to be used when the decree passed.

---

[The proceedings originated on the equity side of Baltimore County Court, and were removed to this court upon suggestion, on the 12th of November, 1850.

The allegations of the bill and the facts of the case are fully stated in the opinion. Before the hearing, the defendant filed, among others, the following exceptions to the bill, and the averments therein, as defective and insufficient:

1st. Because there is no averment in said bill of the insolvency of the defendant, or of any impediment or obstacle in the way of a full, complete and adequate remedy at law for any breach of the covenant set forth in the contract exhibited with the bill.

2d. Because there is no ground of equitable interposition set forth in the bill.

3d. Because, from the bill, it appears that there is a plain and adequate remedy at law for the supposed grievances set out in said bill.

4th. Because the bill does not set forth or aver the exhaustion of the legal remedies of the complainants, so as to entitle them to proceed as upon an equitable lien for the purchase money, or any part thereof.

5th. Because the bill does not profess or claim to rescind the contract, for any alleged fraud or other cause.]

---

THE CHANCELLOR:

This case having been fully and ably argued by the counsel of the parties, has been carefully considered by the court.

It presents the frequently recurring, and probably never-to-be-finally-settled, question, of the precise boundaries which should separate the jurisdiction of this court, from that of the courts of common law, it being insisted here, on the part of the defendant, that to grant relief upon this bill, would be trenching upon the well settled principle, that a court of chancery should not be resorted to, when full and complete redress may be obtained at law.

The controversy in this case grows out of certain articles of agreement, signed and sealed, by William Ridgeway, and the defendant Toram, bearing date on the 29th of September, 1849, by which, Ridgeway, in consideration of the sum of $8,711, or the value thereof, to be paid or transferred to him, as in the agreement is specified, covenanted and agreed with Toram, on or before the 20th day of October, then ensuing, to convey to him in fee simple, certain real estate in Baltimore county, with the buildings, improvements, and appurtenances, and, also, on or before said day, to convey, assign and transfer to him, for the same consideration, various articles of personal property, farm stock, and crops on said farm, included in an inventory therewith given, and exhibited to said Toram. And Toram, on his part, covenanted and agreed, that on the execution and production of the conveyance for the farm, and the assignment and transfer of the personal property, &c., he would pay, or cause to be paid, and transferred to Ridgeway, the amount of $8,711, as in the agreement is expressed. That is to say, the sum of $800, in cash, also to give and execute to him a bond and mortgage on said farm for the sum of $450, payable in one year. Secure him, Ridgeway, five quarters' rent of the dwelling house and manufacturing establishment, where Toram then lived and carried on his business in Philadelphia, the five quarters amounting to $500, and also by some proper instrument of writing, transfer to Ridgeway the fixtures, improvements, and bottles of said establishment. The fixtures and improvements to be rated at $1,500, and the bottles guaranteed to be worth $5,000, at the rate of $6 50 per gross, the number being seven hundred and twenty gross, and in case

27*

there were in the establishment a greater number of bottles than specified, they were to be given in. The cash payment, the mortgage, the fixtures, bottles, &c., amounting to the sum of $8,250, to which was to be added a stock of porter, ale and cider, to the amount of $400, at the price stipulated in the agreement, leaving a balance of $61 to be paid on the day of settlement. And to the performance of these mutual stipulations, the parties bound themselves, each to the other, in the sum of $1,800.

The bill alleges that the farm, which the complainant, Ridgeway, thus agreed, for the considerations mentioned, to convey to the defendant, was the property of his (the complainant's) wife, she being a co-complainant, and that, with her consent, he entered into the contract. That in pursuance thereof, he and his said wife, did execute, and deliver, to the defendant, a deed in fee simple for the farm, which the said defendant has had enrolled, and that he, the defendant, hath also taken possession of the personal property, and crops, in said articles of agreement mentioned. That in getting possession of said deed and property, the said defendant has perpetrated upon complainants, a fraud, and that he obtained the possession by falsely pretending that there belonged to said establishment, bottles of the value of $5,000, at the price stipulated, when, in truth and in fact, there were only $999 30 cents worth, wherefore, the bill charges that the deficiency in the value of said bottles of $4,000 70, constitutes a charge upon said land, as purchase money, for the payment of which it is liable to be sold, also for the further sum of $200, part of the $800 to have been paid by the defendant in cash, the defendant having paid but $600, on account thereof.

The bill then charges that complainants have been informed, and believe, that defendant is trying to sell the real and personal estate, for the purpose of converting the same into money, that he may depart for foreign parts, and thus escape his responsibility to the complainants.

The prayer is for an injunction, and receiver, and that the property may be sold for the payment of complainant's claim, and for further relief.

Baltimore County Court, on the equity side of which this bill was filed, ordered an injunction, but no order has been passed, upon the application for the appointment of a receiver.

The inventory and appraisement of the property and crops referred to, and made part of the agreement between the parties, was as follows :

| | |
|---|---|
| Real estate, valued at | $6,500 |
| Personal estate, valued at | 2,211 |
| | $8,711 |

The answer of the defendant, alleges, that the complainants, after the sale to him, sold and disposed of portions of the personal property, and otherwise dealt unfairly with defendant. He denies the allegations against him of fraud—avers that complainant took possession of the bottling establishment in November, succeeding the date of the contract, and still holds and enjoys the same, and the profits thereof. That he is solvent in his circumstances, and fully able to pay any claim which complainant can establish at law. In addition to the implied objection raised by the answers to the jurisdiction of the court to grant relief upon this bill, the defendant, by specific exceptions to its averments, has presented the question in a more distinct form, and it, therefore, becomes necessary, to inquire whether the complainants, under the pleadings, are entitled to relief.

The bill, it is true, charges, that the defendant in getting possession of the deed and property of the complainants, has perpetrated a fraud, but the contract is not, on that account, sought to be rescinded, and the parties remitted to their original rights. There can be no doubt, that if a fraud has been practiced upon the complainants, they would be entitled to disaffirm the agreement, *ab initio*, or they might affirm the agreement, and bring an action for the non-performance of it by the defendant. *Murphey* vs. *Barron*, 1 *Har & Gill*, 258.

In this case, though fraud is charged, the complainants have adopted the latter alternative, and offering the agreement, seek to enforce its stipulations against the defendant, by compelling him to pay the purchase money, which it is alleged, is a charge

upon the land.   It is a bill, then, to enforce the vendor's lien
for the purchase money of land sold, and conveyed, and the
question, is, whether it charges such facts, as, according to
well established principles, will justify this court in extending
its aid to him.

The rule upon the subject, too firmly established to be dis-
puted, is this : that a "bill in equity can be filed to enforce the
vendor's lien, only when the complainant has exhausted his
remedy at law, or when he avers in his bill, such facts as will
show that he cannot have a full, complete, and adequate reme-
dy at law."   Such was declared to be the principle in *Richard-
son* vs. *Stillinger*, 12 *Gill & Johns.*, 477, after an examination
of all the previous cases upon the subject, and it is not now
open for contest.

Now, as I understand this bill, no circumstance is stated,
showing either the exhaustion, or the inadequacy of the legal
remedy.   It does not charge the insolvency of the defendant,
or his absence from the state, or any other impediment to the
enforcement of the legal remedy, and, consequently, if the com-
plainants are entitled to the aid of this court, it is not because
they have stated in their bill, a case showing the inability of
the courts of common law to afford them relief, but, because
such want of power, appears either in the answer, or evidence,
or in some other of the proceedings.   The answer, however,
certainly does not contain any thing of the sort, it being, on the
contrary, there distinctly averred, that the defendant is solvent,
and able to pay any claim which the complainant can establish
at law.

But the question of jurisdiction depends exclusively, upon
the case made by the bill, and in determining whether this
court can or cannot grant relief, we are not at liberty to have
recourse to the statements of the answer, or to any other part of
the proceedings.   *Chambers* vs. *Chalmers*, 4 *Gill & Johns.*,
420.

Confining our attention to the bill in this case, as we are re-
quired to do, in settling the question of jurisdiction, and noth-
ing appears to prevent the complainant from obtaining full and

complete redress in an action at law. It is by no means certain, looking to the averments of the bill alone, that the complainant could not have maintained an action on the covenant, but if he could not have done so, there would seem to be no doubt that he could have obtained relief at law, in another form of action. The cases cited with approbation, by the Court of Appeals, in *Watchman and Bratt* vs. *Crook*, 5 *Gill & Johns.*, 239, would seem to leave no doubt upon the subject. It is there said to be a settled rule, even in the case of deeds, that if there be a condition precedent, and it is not performed, and the parties proceed with the performance of other parts of the contract, although the deed cannot take effect, the law will raise an implied assumpsit. The case of *Fresh* vs. *Gibson, et al.*, 16 *Peter's Rep.*, 327, is to the same effect. In this case the plaintiff, William Ridgeway, strictly complied with his agreement so far as the farm is concerned, and as to the personal property, the defendant took possession thereof; and, therefore, there can be no doubt, that if an action of covenant could not be supported, because there was not a strict compliance on the part of Ridgeway, with the entire contract on his part, yet enough was done to raise an implied assumpsit, upon which the action of assumpsit could be maintained. The defendant accepted the deed of the real, and took possession of the personal property, and upon the most obvious principles of justice, was bound to pay their worth.

Besides these objections to a decree enforcing the lien of the vendor in this case, there is another of much practical difficulty,

The property sold consisted of real estate, valued at   $6,500
and personalty, valued at      2,211

Making      $8,711

The consideration to be paid by the defendant, in the mode stipulated in the contract, was for this aggregate amount of real and personal property. The bottles were valued at $5000, and the deficiency is alleged to be $4,000 70, and this deficiency is alleged to be a charge on the land. But why, it may be asked, should the whole of this deficiency be charged upon

the lands? The bottles, so far as they constituted the consideration to be paid by the defendant, were equally applicable to, and were to be taken in payment of the personalty, as well as of the land, and there can be no propriety in saying, that the whole amount of the deficiency shall be charged upon the latter. There would, therefore, have to be an apportionment, and the land could only be considered answerable for such proportion of the deficiency as should, upon such apportionment, be found applicable to it. The personal estate was estimated at nearly one-third of the value of the realty, and hence it would follow, that the land could, in no event, be regarded as bound for more than two-thirds of the amount of the deficiency.

The decree, however, which I shall pass in this case, rests upon the ground, that the plaintiffs have not, by their bill, shown either that they have no remedy at law, or that having a legal remedy, it has been exhausted.

The argument is, that because the land belonged to the wife, and the personal estate to the husband, an action at law could not have been maintained, either by the latter alone, or by the husband and wife jointly.

But this, I think, is an erroneous view of the effect of the agreement of these parties. That agreement, as I understand it, obliged William Ridgeway, on, or befere the day stipulated, to secure to the defendant, a good title to the farm, and if this was done, whether the deed was executed by him alone, or by him and his wife conjointly, could not be material. And especially it would not lie in the mouth of the defendant, to objection the title thus conveyed to him, after receiving the deed, and taking possession of the land. It seems to me, therefore, to be quite clear, that an action at law, either upon the covenant, if no other objection existed to that mode of proceeding, or an action of assumpsit, upon the principles before stated, could be maintained by the husband alone.

It has been supposed, and urged by the complainant's counsel, that the relief sought in this case may be granted, upon the ground, that the bill may be considered, as a bill for a specific performance of the contract. The bill, however, does not seek for any such decree, nor, as I apprehend, is there any

thing in the evidence, or in the nature of the case, which would justify the exertion of this extraordinary power. If the court interposes at all in this form, it must act *ex vigore*, and execute the contract precisely as the parties made it. It must, therefore, decree the delivery of the number of bottles stipulated for in the agreement, and this, too, notwithstanding it is conceded the plaintiff, the husband, did not comply in all respects with the agreement on his part, that is, that he did not deliver the full amount of farm produce, which he contracted to deliver. *Vide Seymour* vs. *Delancy*, 6 *Johns. Ch. Rep.*, 222.

Under such circumstances, it would surely be better, and more conformable with the justice of the case, in the language of Chancellor Kent, "to submit the case to a jury, where relief could be afforded in damages, with a moderation agreeable to equity and good conscience, and where the claims and pretensions of each party, can be duly attended to and be admitted to govern the assessment."

It is to be recollected, that this is not the case of a vendor retaining the legal title, when according to the opinion of Montgomery County Court, in *Magruder* vs. *Peter*, 11 *Gill & Johns.*, 229, the lien for the purchase money is equivalent to a mortgage, but the case of a vendor, who has parted with the title, and has nothing but an equity, to pursue the real estate sold in the hands of the vendee, and volunteers claiming under him or his alienees, with notice, when chancery can only afford him relief upon the ground, that his remedy at law is exhausted, or it can be shown that none exists. *Pratt* vs. *Vanwycks' Exrs.*, 6 *Gill & Johns.*, 495.

Here, according to the views which have been expressed, it does not appear, either that the legal remedy has been exhausted, or that none exists, and, therefore, I am of opinion, that it is not competent for this court to grant the relief prayed by this bill, which must be dismissed, but there are circumstances in the case, which make it proper that it should be done without costs, and accordingly I shall so decree.

WILLIAM M. ADDISON for Complainants.
ROBERT J. BRENT for Defendant.

[The decree dismissing the bill was passed, in accordance with the foregoing opinion, on the 21st of November, 1850, and on the 30th of the same month the complainants filed a petition for leave to file a supplemental bill in the nature of a bill of review. In this petition they state that since the filing of the bill in this cause, and since the same was at issue, Toram, the defendant, removed out of the state, and that they have been informed and believe, that said Toram has sold the greater part, if not the whole, of the personal property conveyed to him by complainants, and that he has carried out of the state all his personal property not so sold.

They farther state, that said Toram is now utterly insolvent, and that they have received this information since the decree ; but that before the hearing of the cause, and after it was at issue, they had received information leading them to suspect his insolvency. That they knew of his removal out of the state, and of his having sold his property as above, after issue and before the hearing.

They then state, that they were not aware, but utterly ignorant, until after the decree was passed, of the importance of averring, and proving his non-residence, his insolvency, and his having sold, removed, and made way with his personal property as above stated, and, therefore, they pray leave to file a supplemental bill in the nature of a bill of review for the purpose of introducing the above facts.

Upon the matter of this petition the following opinion was delivered.]

———

THE CHANCELLOR:

The decree in this case was passed on the 21st of November last, and on the 30th of the same month, the complainants filed their petition for leave to file a supplemental bill in the nature of a bill of review, and as the decree had not then been enrolled, the application is in conformity with the practice. *Young* vs. *Keighley*, 16 *Vez.*, 348.

The decree which by this petition the complainants ask leave to review, was passed upon the ground that the bill did not

make a case giving the court jurisdiction, because there were no allegations showing either that the complainants, had no remedy at law, or having a remedy, had exhausted it. The present application does not rest upon the ground that the facts, which it is proposed to bring before the court in a supplemental bill, have occurred, or come to the knowledge of the complainants since the decree, but that such knowledge was acquired between the period when the cause was put at issue and the hearing, and the question, therefore, is, whether, according to the rules which have been established for the government of the court upon this subject, or upon the reason and expediency of the thing, it would be proper to open the litigation, and re-try the cause upon the ground relied upon.

In England, it appears to be settled, that a bill of review, or a supplemental bill in the nature of a bill of review, may be filed upon new and material evidence, discovered since publication, and of which the party could not have come to the knowledge before publication by the exercise of reasonable diligence. "The question (said Lord Eldon, in *Young* vs. *Keighley,* 16 *Vez.,* 353) upon a bill, in the nature of a bill of review, is not what the plaintiff knew, but what, using reasonable diligence, he might have known," and in that very case, though he deemed the evidence very material, and as such, would have essentially changed the decision if it had been brought before the court at the proper time, he dismissed the petition, upon the ground, that though the evidence was not discovered until after publication, it might have been discovered before by using reasonable diligence. In speaking upon this subject, Mr. Justice Story says, "and the qualification of the rule, is, that the matter must not only be new, but it must be such, as the party, by the use of reasonable diligence, could not have known, for if there be any laches or negligence in this respect, that destroys the title to relief." *Story's Eq. Pl.,* section 414.

And the same rule, and qualification of the rule, has been repeatedly and emphatically affirmed and enforced by Chancel-

lor Kent. *Weiser* vs. *Blackley et al.*, 2 *Johns. Ch. Rep.*, 488; *Singston* vs. *Hobbs et al.*, 3 *Johns. Ch. Rep.*, 124.

If, then, the facts, which it is proposed to bring to the notice of the court by a supplemental bill in the nature of a bill of review, were either known to the complainants in time to be used when the decree passed, (which refers, in England, to a period prior to the publication of the testimony,) or are facts of which they could have acquired the knowledge by the use of reasonable diligence, it would be contrary to the rule and practice of the court to grant the application. In this state, there is no formal rule for the publication of testimony, as in England. Here, objections to the evidence are taken and considered at the hearing of the cause. *Strike's case*, 1 *Bland*, 96.

And it is presumed, that if, at any time before the hearing, the parties should lay before the court a sufficient foundation, they would be permitted to take evidence discovered by them, after the return of the commission, and if the introduction of such evidence required the bill to be amended, an order for that purpose would be granted, or perhaps it might be amended, or a supplemental bill filed, without an order, and as a matter of course.

In this case, the petition does not state precisely when the newly discovered facts came to the knowledge of the complainants. It states, that they received the information, and acquired the knowledge of the facts relied upon, "before the hearing of the cause, but after it was at issue," but whether before or after the return of the commission is not stated. In either case, however, it is not doubted, that upon an application to the court at any time before the hearing, the complainants might have obtained an order remanding the commission to collect the newly discovered evidence, or if necessary, to amend their bill, so as to bring it within the issue. But the petition in this case alleges, that though the facts which the petitioners wish to present in their supplemental bill, came to their knowledge prior to the hearing, they were ignorant until after the decree passed, of the importance of averring and proving them, and for this reason, suppose they should now be permitted to do so.

In speaking of the practice in reference to supplemental bills, (not supplemental bills in the nature of bills of review after decree,) when the same become necessary in the progress of the cause, Judge Story says, "a supplemental bill (strictly so called) is proper, whenever the imperfection in the original bill arises from the omission of some material fact which existed before the filing of the bill, but the time has passed at which it can be introduced into the bill by an amendment," and that "this may arise, either from the importance of the fact not being understood in the preceding stages of the cause, and, therefore, not being put in issue, or from the fact itself not having come to the knowledge of the party until after the bill was filed." *Story's Eq. Pl.*, sec. 333.

But he is here speaking of supplemental bills *prior to the decree*, and these, he says, may be used for the purpose of bringing before the court facts, which, though existing prior to the filing of the bill, were not known to the party until too late to introduce them by way of amendment, or if they were so known, their importance was not understood until the time of amendment had gone by. In this case, however, the application is for leave to file a supplemental bill in the nature of a bill of review, and in such a case, I do not any where find it said, that a party will be permitted to do so when newly discovered evidence was known to him in time to be used when the decree passed, or might have been known by the use of reasonable diligence, because its importance was not understood until after the decree had passed. The bill in this case was dismissed upon the ground that the case made by it did not give the court jurisdiction to grant relief, the legal remedy not having been shown to be exhausted or never to have existed. And the exceptions filed by the defendant to the averments of the bill distinctly brought to the notice of the complainants, that their rights to the aid of the court would be resisted upon this very ground. They were not, therefore, taken by surprise, and I cannot bring myself to think, that under the circumstances stated in their petition, they are entitled to review the former decree of the court.

It is always a subject of regret when the court finds itself under an obligation to decide causes, upon grounds not going to the merits, but this regret, of course, cannot have the effect to induce it to overthrow established rules, and, more especially, when those rules are so essential to prevent protracted and ruinously expensive litigation. In the language of Lord Eldon, in 16 *Vez.*, 351, "the court must not be induced by any persuasion as to the fact that the plaintiff had originally a demand, which he could clearly have sustained, to break down rules established to prevent general mischief at the expense even of particular injury." The petition must be dismissed.

Wm. M. Addison for the petition.

[No appeal was prosecuted in this case.]