# GRAFTON,

## JULY TERM, A D. 1852.

## POWERS v. HALE.

25 145
70 235
25 145
72 443

Mere inadequacy of price, independent of other circumstances, is not of itself sufficient to set aside a transaction.

But it may induce the court to stay the exercise of its power to enforce the specific performance of a contract for the sale of land.

The court will not decree the specific performance of a contract to convey land, where there is any misrepresentation of the condition or value of the property.

The plaintiff, having ascertained that persons living in the vicinity of the defendant's land would give a certain price for it, anticipated them, and procured from the defendant a bond, conditioned for the conveyance of the land upon the payment of the plaintiff's note for $75, which was a much less sum than he had reason to suppose others would give for it. The defendant was unacquainted with the condition and value of the land, which the plaintiff represented to be of little value, and the information he had procured concerning the price he did not communicate to the defendant. The plaintiff afterwards contracted to sell one of the lots for $62,50, and was offered $100,00 for the other. *Held*, that a bill for the specific performance of the defendant's contract could not be sustained.

During the pendency of a bill in equity, the defendant was notified by the plaintiff, on two occasions, to attend the taking of depositions. He accordingly attended, but no depositions were taken. He contended that his costs for travel and attendance should be allowed and taxed for him as costs in the cause, whether he finally obtained a decree in his favor or not. *Held*, that as the Revised Statutes, chap. 188, § 22, had provided a remedy for him by an action on the case, the costs could not be taxed for him, particularly in that stage of the proceedings.

IN EQUITY. The defendant, owning two lots of land in Groton, in this county, being lots numbered seven and ten,

in the fourteenth range of the third division of lots, on the eighteenth day of August, 1845, agreed to sell them to the orator for the sum of seventy-five dollars, and gave him a bond conditioned for the conveyance of the lots, upon the payment of that sum, and agreed that the orator should occupy the lots, the orator being to pay the taxes thereon. The orator gave his promissory note to the defendant for the sum of seventy-five dollars, and on the 27th day of May, 1846, tendered that sum, with the interest, to the defendant, together with the amount of taxes which had then accrued upon the land, and demanded a conveyance. On the eighth day of August, 1846, he also tendered to the defendant the sum of seventy-five dollars, with the interest, together with the taxes, and he alleges that he has at all times since been ready to pay the money, and the interest, and the taxes, and receive a conveyance of the land.

The bill seeks for an answer, and for a specific performance of the agreement, and for general relief.

The defendant states in his answer that on the eighth day of August, 1845, and before, and long after, he was ignorant of the situation, quality, condition, or value of the land, having never been upon nor examined it. In the year 1843, as he believes, the orator came to him and said that he desired to buy the land, or a part of it; that it was but of little value; that there was not valuable land enough to make a farm, and that the timber had been pilfered from it. On the seventh and eighth days of August, 1845, the orator came again to the defendant, and conversed with him about buying the land. The defendant said he was willing to sell it for a fair price and for its value, but desired to have it surveyed. The orator said that would be unnecessary and a needless expense; that he was well acquainted with the land, and that it was of very inferior quality; that there was no road within half a mile of it, and it was not likely there would be one; that the timber upon it was poor; that some part of lot No. 7 might make pasturing, and that was what

he desired it for, and all for which it was fit; that lot No. 10 was not worth more than ten dollars at most; that the only thing it was fit for was to hold the world together; that it lay far back upon the mountain, and was nearly all a ledge; and that he would not take the gift of No. 10 unless he could have No. 7 with it. The plaintiff talked on the subject for one or two hours, and said the land was worth more to him than to any other person, on account of its situation in his neighborhood, and that he would pay for it all it was worth. The defendant said he would delay selling the land until he could satisfy himself by examination of its value, and that he always supposed it to be worth more than the plaintiff represented. The plaintiff seemed to be impatient of delay, and offered him seventy-five dollars for it. The defendant, being ignorant of the real value of the land, and relying on the representation of the plaintiff, agreed to sell it for that sum, and a bond was accordingly given, and the plaintiff gave his note for seventy-five dollars, payable in one year. A few weeks afterwards, the plaintiff made a verbal contract to sell lot No. 10 for sixty-two and a half dollars, and was offered one hundred dollars for lot No. 7. The lots were worth between one hundred and sixty and two hundred dollars, and there were responsible persons thereabouts who were willing to give for the land more than seventy-five dollars, and this was known to the plaintiff. Lot No. 7 was situated within a few rods of the road between Groton and Dorchester, and was well covered with wood and timber, and the soil was suitable for grain, grass, and other crops. Lot No. 10 was well covered with spruce, hemlock and different kinds of hard wood timber, and was well suited for grain, grass, &c., all which was well known to the plaintiff at the time of the contract. The quality of the land came to the defendant's knowledge after the bond and note were made. The plaintiff made the statements relative to the land to the defendant with an intent to defraud him, and to induce him to sell the land for a sum

less than its value, confiding in which the defendant was induced to execute the papers, which ought, therefore, to be held void. On the 12th of November, 1845, he notified the plaintiff that he should not perform the condition of the bond. On the fifth of February, 1847, he demanded the bond of the plaintiff, and tendered to him his note. The plaintiff took the note and still keeps it, but did not return the bond, saying it was at Haverhill. On the 15th of February, 1847, the defendant mortgaged the land to one D. A. Bunton, which mortage is still in force.

The answer admits that the plaintiff tendered to the defendant the sum due on the note and the taxes, as alleged in the bill, which the defendant declined to receive.

Evidence was taken on both sides, and it was proved that the plaintiff misrepresented the condition and quality of the land to the defendant. It was also proved that the plaintiff, having ascertained that some of the persons living in the vicinity would give a certain price for the land, anticipated them, and procured it for a much less price than he had reason to suppose others would pay for it. It also appeared that the price he agreed to pay was entirely inadequate to the value of the land.

*Morrison*, for the plaintiff.

The agreement stated in the bill is admitted by the answer, and need not be proved. *Hart* v. *Ten Eyck*, 2 Johns. Ch. 62; Gresley's Eq. Ev. 428; Daniel's Ch. Pr. 977.

The agreement having been entered into by a competent party, if not avoided by matters alleged in the answer and sustained by evidence, it is as much, of course, for this court to decree a specific performance as it is to give damages at law for the defendant's breach. *Hall* v. *Warren*, 9 Vesey 608; 2 Story's Eq. 547; *Rogers* v. *Sanders*, 4 Shepl. 92; Sugd. on Vend. 154.

The answer admits that " said parties came to an agreement for the sale of said lots, which was reduced to writing,

as is stated in said bill, and is in the form stated in said bill."
The other matters alleged are only in avoidance of this
agreement, and the burden of proof is on the defendant to
sustain these allegations by evidence. *Western R. R. Co.*
v. *Babcock,* 6 Met. 346; *Clark* v. *White,* 12 Peters 178; 6
Johns. 543; Daniel's Ch. Pr. 984, note; 3 Shepl. 125; *Green*
v. *Hart,* 1 Johns. 580.

The defendant is not allowed to state one case in his an-
swer, and make out another by proofs; his *allegata* and *pro-
bata* must agree; the latter must support the former. *Boone*
v. *Childs,* 10 Peters 178; Daniel's Ch. Pr. 992; 1 Greenl.
Ev. 58.

Hence if the proofs go to matters not alleged in the an-
swer, the court cannot judicially act upon them as a ground
of decision. And so much of the depositions as relates to
such matters must be rejected. *Harrison* v. *Nixon,* 9 Peters
483; *James* v. *McKennon,* 6 Johns. 543; *Clark* v. *Turton,*
11 Vesey 240; *Willan* v. *Willan,* 19 Vesey 600.

Inadequacy of consideration alone will not prevent a decree
for specific performance of a contract unless gross; so gross
and the proofs of it so clear, as to lead to a reasonable con-
clusion of fraud or of mistake, not attributable to the defen-
dant's negligence. *Western R. R. Co.* v. *Babcock,* 6 Met.
346; *Coles* v. *Trecothick,* 9 Vesey 246; *Burroughs* v. *Locke,*
10 Vesey 474; *Low* v. *Burchard,* 8 Vesey 137; Sugd. on
Vend. 189; *Seymour* v. *Delancey,* 3 Cow. 445.

And the enhancement or depreciation of the property, by
events subsequent to the making of the contract, will not
be regarded by the court. 3 Fairf. 441.

It was the defendant's duty to know patent advantages of
his own property, and even if he was under a misappre-
hension in regard to them, the court will not relieve him
from the consequences of his own neglect. Sugd. on Vend.
2; Long on Sales 202. *Hargrave* v. *Dyer,* 10 Vesey 506;
Chitty on Cont. 385.

A person treating for a purchase is not bound to allege

truly, if he state at all, the motives which operate with him for treating or for making the offer he in fact makes. Nor is he answerable for false affirmations of value, nor for a false affirmation that no one else would give more than he offers. The seller gives no credit to such assertions, or if he does, it is his own folly to do 'so. Besides, value consists in estimation and judgment, in which men differ. *Vernon* v. *Keyes*, 12 East 616 : *Harvey* v. *Young*, Yelv. 20 ; Sudg. on Vend. 3 & 5 ; 2 Kent's Com. 485.

Hence even the answer itself does not disclose adequate reasons why the plaintiff should not have a decree. Much less does the evidence support any allegation in the answer sufficient, if proved, to prevent such a decree. It proves neither inadequacy of consideration nor misrepresentation.

*Hibbard* and *Page*, for the defendant.

A decree for a specific performance of the contract should not be made.

I. Because of the inadequacy of the price agreed in the contract to be paid for the land.

There is in equity a distinction between enforcing specifically, and rescinding a contract. The defendant, in order to avoid being decreed to perform this contract specifically, is not called on to make out so strong a case as would be necessary in order to have it rescinded ; and it does not follow that a contract of sale is void in law merely because equity will not decree a specific performance. 2 Kent's Com. 487 ; *Seymour* v. *Delancey*, 6 Johns. Ch. 222.

Inadequacy of price is a sufficient answer to the bill, apart from the matter of fraud. *Seymour* v. *Delancey* supra.

In the case of *Barnadiston* v. *Lingwood*, 2 Atk. 133, Lord Hardwicke said that in the case of a hard bargain that was executory only, the constant rule of the court was not to carry it into execution. In *Baxter* v. *Lister*, 3 Atk. 385, he said nothing was better established in chancery than that

every agreement or contract of sale ought to be certain, fair and just in all its parts; and if any of those ingredients were wanting in the case, the court would not decree a specific performance.

II. The plaintiff procured the contract to be made by fraud, using deceitful representations and fraudulent concealment to the defendant respecting the quality, situation, and value of the land. The bill states clearly a case of fraud, and in relation to the most important matters alleged in the bill the answer is evidence, because it is responsive to the bill. Story's Eq. Pl. § 849.

The rule as to fraud, and the degree of fraud necessary to vitiate a contract, is the same at law as in equity. 3 Bl. Com. 429. Fraudulent concealment alone will vitiate a contract. 2 Kent's Com. 482–491. *Thurston* v. *Blanchard*, 22 Pick. 18. In the case of *Matthews* v. *Bliss*, 22 Pick. 48, where one tenant in common of a vessel sold his share therein to his co-tenant, it was said by the court that "if there be any studied efforts on the part of the tenant in common to prevent his co-tenant from coming to a knowledge of the truth, or if there be any, though slight, false and fraudulent suggestion or representation, then the transaction is void." And it was also said that "in order to avoid a sale under such circumstances, it is not necessary that the false representations should be the predominant motive inducing the sale, but it is sufficient if it was a motive at all inducing the sale."

As in the case of inadequacy of price, so in that of fraudulent concealment or representation, a less degree will be necessary to prevent a decree of specific performance as in this case, than would be required to set aside a contract; though here we contend there is enough for either purpose.

GILCHRIST, C. J. As to the inadequacy of the consideration, although mere inadequacy of price, independent of other circumstances, is not of itself sufficient to set aside a

transaction, yet it may induce the court to stay the exercise of its power to enforce the specific performance of a contract for the sale of land. *Seymour* v. *Delaney*, 6 Johns. Ch. 222. Equity will not carry hard or unreasonable agreements into execution. There is a distinction between the power of setting aside a contract and decreeing its execution. 1 Madd. Ch. R. 9. *Howell* v. *George*, 6 Johns. Ch. 222. The court has a discretion as to decreeing a specific performance. *White* v. *Damon*, 7 Vesey 35. And a decree for specific performance has been refused where the execution of the agreement would operate with considerable hardship on the defendant. *Fain* v. *Brown*, 2 Vesey 307. If articles of agreement are unfairly obtained, though not to such a degree as to set them aside, yet the court will not order their performance. 6 Johns. Ch. 226. The power of awarding the specific execution of contracts for the sale of land, rests in sound judicial discretion, and will not be applied to cases that are hard or unfair or unreasonable, or founded on very inadequate considerations. *Ibid.* 226.

A party who resorts to equity for a specific performance, must come with perfect propriety of conduct on his part. The plaintiff did not impart to the defendant the information he had acquired concerning the price for which the land could be sold. But this alone cannot be regarded as indicating fraud. There was no mutual trust and confidence between the parties which would render such conduct dishonest. Tenants in common of a vessel do not stand in such a relation to each other, that one would be bound to communicate to the other such information as he might acquire concerning the price for which the vessel might be sold. He is under no legal obligation to disclose that a third person had previously agreed with him to purchase the whole of the vessel at a higher rate, when he is contracting with his co-tenant for the purchase of his share at a certain price. Such was the decision in the case of *Matthews* v. *Bliss*, 22 Pick. 48. But it was also held that if there were

Powers *v.* Hale.

any, though slight, false and fraudulent suggestion or representation, then the transaction is tainted with turpitude, and alike contrary to the rules of morality and of law. If the fraudulent representation was a motive at all inducing to the act, if it was one of several motives acting together and by their combined force producing the result, then the contract would be invalid.

A party who has made a misrepresentation, even to a small extent, will not be entitled to a decree for specific performance. His conduct must be free from all blame, and he must be liable to no imputation. Sir W. Grant, *Clement v. Tasburgh*, 1 Jac. & W. 112. Wherever there is a concealment of a defect, either as to the title of an estate, its quantity, quality or condition, it will be a sufficient ground for resisting a decree for specific performance. *Shirley v. Stratton*, 1 Bro. C. C. 440. Telling an untruth, knowing it to be an untruth, with intent to induce a man to alter his condition, and his altering his condition in consequence, whereby he sustains damage, fulfils all the requisites to support an action for deceit, although the party telling the untruth intended no fraud or injury. *Watson v. Poulson*, 7 Eng. L. & Eq. 585. There seems to be no reason why this principle should not apply in equity.

The question, then, arises, whether there was any misrepresentation here on the part of the plaintiff. And upon that point, and also as to the inadequacy of the price, the weight of evidence is, both that the price was inadequate to a great extent, and that Powers did not make a fair representation of the condition and quality of the land. It appears that Powers, having ascertained that some of the persons living in the vicinity would give a certain price for the land, anticipated them, and procured the land for a price much less than he had reason to suppose others would give for it. The knowledge he procured he did not impart to the plaintiff, and the allegations in the answer are substantially proved. We think that the defence is sustained, and that the

10

bill should be dismissed. We shall direct the following decree to be entered.

DECREE. It is declared that from the great inadequacy in the price for which the defendant contracted to convey to the plaintiff the lots numbered seven and eight, mentioned in the bill, and from the misrepresentations, made by the plaintiff to the defendant, of the condition and quality of the land, the contract to convey them, contained in the defendant's bond to the plaintiff, ought not in equity and good conscience to be decreed to be carried into specific execution by the defendant. It is thereupon ordered and decreed than the bill be dismissed.

Before the decision of this cause the following question of costs was submitted to the court.

On the 8th of June, 1849, Hale, the defendant was notified to attend the caption of certain depositions, to be taken by the plaintiff; and on the 20th of June, a similar notice was served upon him. He attended at the place designated, in pursuance of the notices, but no depositions were taken on either occasion. His fees for travel and attendance amounted to the sum of $15, which sum he alleged should be taxed for him as costs in the cause, whether the decree was in his favor or not. It is enacted by section 22, chapter 188 of the Revised Statutes, that if any party, after giving notice to the adverse party, shall neglect to take a deposition, the adverse party shall be entitled to recover twenty-five cents a mile for actual travel of himself or his attorney to attend the caption, by an action on the case.

GILCHRIST, C. J. The general principle to be found in the books is, that costs in equity are entirely in the discretion of the court. *Jones* v. *Coxeter*, 2 Atk. 399. And although this principle is somewhat modified in its application by the rule that the prevailing party is entitled to costs, yet it is

often necessary to exercise the general discretionary authority which the court possesses upon this subject. The costs of a motion refused, are not costs in the cause. *White* v. *Lisle*, 4 Madd. 226. And there seems to be no reason why the costs in question should be so considered. If the party had no other remedy for the loss of his time and travel, there would seem to be some reason for including them in the general costs of the cause. But as the statute has provided a sufficient remedy, the rights of the party are sufficiently protected by resorting to it. There is no reason to suppose that the statute intended to provide any other remedy for the recovery of such costs than that afforded by an action on the case. And the defendant's application, must, therefore, be rejected, particularly in this stage of the proceedings.