CHARLES A. WATERS,
vs.
CHARLES HOWARD AND WIFE ET AL. } DECEMBER TERM, 1847.

[SPECIFIC PERFORMANCE—ELECTION.]

UPON a bill for the specific performance of a contract, the court must entertain no reasonable doubt of the existence of the contract, and be satisfied that it is one, which, looking to what is just and reasonable, ought to be enforced.

The specific performance of contracts in equity, is not a matter of absolute right in the party, but of sound discretion in the court; and unless the court is satisfied that the application is fair, just and reasonable in every respect, it will refuse to interfere, but leave the party to his remedy at law for compensation in damages.

In contracts relating to personal property, unless it can be clearly shown, that adequate compensation cannot be given by an action at law, chancery will not interfere.

If the interest which a creditor takes by the will, is not co-extensive with, or of the same nature of, that to which he is entitled from the testator as his debtor, he will be entitled to both interests.

The degree of intention necessary to raise a case of election must plainly appear upon the face of the will, but the court is not to disregard what amounts to a moral certainty of the intention of the testator.

Though evidence *dehors* the will, will not be admitted to prove or disprove such intention, there is no valid objection to such evidence to show the state and circumstances of the property.

A party cannot take a benefit under a will, and at the same time defeat its provisions.

———

[This case originated in the equity side of Baltimore County Court, and was thence transferred to this court.

The bill was filed by Charles A. Waters and Ann Rebecca, his wife, (since deceased,) for the specific performance of a contract, entered into by the late Charles Waters, (grandfather of the said Charles A.) previous to, and in consideration of the intermarriage of the latter with the said Ann Rebecca, to purchase for the complainants, on the consummation of the intended marriage, a farm, to be fully stocked ; to pay all the debts of the said Charles A., existing at the time of the marriage—and to furnish them with adequate means of subsistence during the first year thereafter. The bill stated, that in part performance thereof, the grandfather shortly after the marriage, purchased a farm in Baltimore county, containing about 189 acres, and put the complainants in possession, having partly stocked it, and was about to pay the debts of the said Charles A., amounting to about $2000, when he was prevented by a sickness which caused his death. The farm was only partly stocked—and no provision had been made for the complainant's support during the year ensuing their marriage. Elizabeth A. Howard and Rebecca A. White, granddaughters of the deceased and sisters of Charles A. Waters, together with their husbands and infant children, and Freeborn G. Waters, the trustee of the deceased, were made parties. The answers admitted the purchase of the farm by the deceased, and the occupancy thereof by the complainant after his marriage, but denied all intention on the part of the deceased, to put it at his control and disposal or to give

10*

him a larger share of his estate than his other grandchildren, as he had clearly expressed his opinion to that effect. That by so doing, the object of the deceased, which was to afford to his grandson and wife a competent support from the *use* of the farm, would have been defeated; and that the death of the wife, which happened in January, 1847, determined the right to a conveyance, if any existed. The promise to pay the debts abovementioned, they insisted, was made upon condition of the said Charles A. reforming his habits, alleged to be extravagant, which had not been complied with ; that if any such agreement was made, it was satisfied by the provision (hereinafter described) in the will of the deceased, for his grandson and his wife and children; that, said property was intended by the testator to be disposed of by his will, and that the complainant by electing to take there under, could no longer claim the same, independent of the will. The statute of frauds was also pleaded in bar of the relief prayed. By the testator's will, all the residue of his estate, after certain small legacies, was devised in trust to F. G. Waters, to hold the income, interest, rents and profits of one-third part of said residue, for the use of the complainant during his life, such income, &c., to be paid to him from time to time as they might accrue ; and after his death to his children in fee, and failing children, to the other two grandchildren of the testator, to whom the remaining two-thirds were in like manner devised. It appeared from agreements of counsel, that the property in dispute was purchased from Benjamin Moore, on the 17th of February, 1846 ; that the whole estate of the testator, including this property, was worth nearly $150,000, and the property in dispute worth about $9000. A number of letters were returned with the commission, and the depositions of some witnesses were taken. The letters were written by the testator to his grandson and to the lady whom he afterwards married, in which he spoke of buying a farm and *establishing* them upon it, and in one of them, speaking of his grandson's debts, he said, "they must be paid." The ground taken in the bill was, that the alleged contract was made in consideration of the subsequent marriage, and was, therefore, for a valuable con-

sideration. The existence of this contract was denied by the answers, which insisted, that the testator designed giving them the *use* only of the property; this position being based upon the various acts of the testator, and his declarations, oral and written.]

THE CHANCELLOR:

This question can of course only be determined by a careful examination of the evidence, and after having read it with much attention, I find it, to say the least, very questionable, whether the elder Mr. Waters did mean to pass to the complainants, or to the surviving complainant, in any event, such a title to the property in controversy as is sought to be enforced by this bill.

Looking to the whole evidence, written and oral, I am strongly inclined to the opinion, that the ground taken by the defence is the true one, and that the purchase of this farm, and the placing the grandson upon it, was intended for the double purpose, of given him the means of earning a present support, and as an experiment, by which the grandfather hoped to wean him from his extravagant habits. Any other supposition would subject the grandfather to the imputation of having practiced upon his grandson and wife, the grossest imposition. If, as the complainants say, they were induced to marry upon the faith of the engagement of old Mr. Waters, fully disclosed, to give them the title to this farm, and to perform the other stipulations set up in the bill, and he, immediately after the marriage, took the title to himself, he was guilty of a degree of cruelty and deception towards them wholly inconsistent with that affection and regard for their welfare which appears upon the face of all his letters, and by the whole evidence. The marriage took place on the 4th of February, 1846, and the deed from Moore to the elder Mr. Waters was executed on the 17th of the same month and year. Now, can it readily be believed, that this old gentleman would have entrapped these young people into getting married by an agreement to make them the owners of this property, and then in thirteen days from that time shamefully violate his engagement by taking and keeping the title in himself? Such a

supposition is irreconcilable with the nature of his feelings and relations towards them, and to be credited, must be strongly supported by evidence.

Much stress has been laid by the complainant's counsel upon the case of *Smith et al.* vs. *Gittings et al.*, decided by the Court of Appeals at December term, 1845. That case decides, what is believed to have been well settled before, that marriage is a valuable consideration, and that a promise made in consideration of marriage, cannot be revoked at the will of the party who made it. But the evidence in that case, as it appears to me, of the promise, was of a far more conclusive character, than in this. Indeed, in that case, there could be no doubt, looking to the declarations and acts of Mr. Dugan, both before, and subsequent to the marriage, that the property in question belonged to his daughter Mrs. Smith, and her children, and there was not a single act or declaration inconsistent with that view of the case. In this case, as I have already observed, there is much evidence, leading to a different conclusion, and various considerations of prudence, calculated to deter the grandfather from placing this property at the disposal of his grandson.

Now, this being a case in which the complainants call upon the court to interfere in their favor, by enforcing the specific execution of a contract, they must come before it with a much stronger case, than if they were acting defensively, and merely resisting such an application made by the adverse party—under the circumstances of this case, the court must entertain no reasonable doubt of the existence of the contract, and be satisfied that it is one, which looking to what is just and reasonable, ought to be enforced. 2 *Story, Equity*, sec. 769; *Seymour* vs. *Delancey*, 6 *Johns. Ch. Rep.*, 222.

But there are other grounds upon which, in my opinion, the relief prayed for in this case must be refused. It is established by the cases, and by writers of the highest distinction, that the specific execution of contracts in equity is not a matter of absolute right in the party, but of sound discretion in the court, and that unless the court is satisfied, that the application to it for this extraordinary assistance, is fair, just and reasonable, in

every respect, it will refuse to interfere, but leave the party to his remedy at law, for a compensation in damages. 2 *Story, Equity, secs.*, 769, 770; *Carberry* vs. *Tannehill*, 1 *Har. & Johns.*, 224; *Seymour* vs. *Delancey*, 2 *Johns. Ch. Rep.*, 222.

Now, what is the nature of the application in the present case, and how is the court to afford the redress which is asked of it? The promise charged in the bill, and established by the evidence—if indeed any promise is shown—was to the surviving complainant and his late wife, then Miss Somerville, and was unquestionably intended, if made at all, to provide for them, and their children, if any should be born, a support. But the wife is dead, and there was no issue of the marriage, and the surviving husband now claims to have this contract specifically enforced for his exclusive benefit, although he has received, in another form, and by the will of his grandfather, property to a much larger amount. The contract asserted in the bill, it will be observed, is not merely a contract to convey title to a certain parcel of land, but embraces an engagement to stock it— to pay the debts of the grandson—and support him and his family, for the first year after his marriage. Now, this contract, if enforced at all, is, as is said in the cases, to be enforced, *ex vigore*, and with unmitigated severity. It must be carried into execution in all its parts, though a part of the consideration has unquestionably failed, by the death of the wife, childless; as it is impossible to suppose, if the grandfather ever did make such a binding engagement as is contended for, that the wife and children were not in his contemplation, and constituted, in part at least, the motive for his promise. It seems to me eminently proper, that a case like this, should be sent to law, where, in the language of Chancellor Kent, in Seymour and Delancey, "relief can be afforded in damages, with a moderation agreeably to equity and good conscience, and where the claims and pretensions of each party, can be duly attended to, and be admitted to govern the assessment"—and in this case, there is a peculiar reason why the powers of the court should not be exerted in the form, in which it is applied to. The contract we have seen, is not confined to real estate, but extends to goods and chattels,

and the payment of debts, and it is certainly a general rule, that with regard to contracts respecting goods, and other things of a merely personal nature, this court will not decree specific performance, except in cases in which a court of law could not give adequate compensation in damages.   Unless, therefore, in contracts relating to personal estate, it be clearly shown, that adequate compensation cannot be given by an action at law, chancery will not interfere. 2 *Story, Equity, secs.*, 716, 717, 718.

This court, then, looking to all the circumstances of this case, seeing that in the state of things which now exists, it would be impossible to frame a decree which would do justice as between these parties, being moreover convinced, that the leading motive which induced the grandfather to make the promise—if he did make such promise—can no longer operate, I am not disposed to carry this alleged contract into execution, but will leave the party to his remedy at law, where the jury can afford him the relief in damages, which they may, under all the circumstances, think him entitled to.

If this court should decree the specific performance of this contract, and direct the title to this property to be conveyed to the complainant, so as to give him the dominion over it, I am persuaded, I should be doing that which his grandfather never intended, and for which, as I think, there is no sufficient justification in the proof; for not a single witness has spoken of the nature or quality of the title which the complainant was to receive—and if we are to judge from the will of his grandfather, dated but two months after the marriage, and the character of the interest which the complainant takes under it, there is the strongest reason for thinking, that the absolute transfer to him of the title to this property, would be most repugnant to the intentions of the grandfather, then or previously entertained.

The Chancellor stated it as his opinion, looking to the nature and value of the property in dispute, compared with the devise to the complainant by the testator, that the contract, if established, could not be considered as satisfied by the subsequent devise ; and referred to *Roper on Leg.*, 46, 48, to show that if

the interest which the creditor takes by the will, is not *ejusdem generis*, not being co-extensive with, or of the same nature of that to which he is entitled from the testator, as his debtor, the legatee will be entitled to both interests.

But although, in my opinion, the interest which this complainant takes under the will of his grandfather cannot be regarded as a satisfaction of his claim founded upon the alleged contract, I yet think the will puts him to his election, and that he cannot claim under the will and under the contract also.

There can be no doubt that the degree of intention, necessary to raising a case of election, must plainly appear upon the face of the will, but then the court is not to disregard what amounts to a moral certainty of the intention of the testator. *McElfresh* vs. *Schley and Barr*, 2 *Gill*, 181.

And though evidence *dehors* the will, will not be admitted to prove, or disprove, such intention, there seems to be no valid objection to such evidence to show the state and circumstances of the property. *Judd* vs. *Pratt*, 13 *ves.*, 174; 2 *Roper on Legacies*, 390.

Now, can there be a doubt that the testator did intend to dispose of this property as his own. He took the deed to himself on the 17th of February, 1846, and on the 2d of April following, he made his will, by which he devised to the trustee, his whole estate of every kind and description. I throw out of view his declaration to Mr. Poe, which has been excepted to, but I suppose the *fact* of his taking the deed to himself is evidence, to show the state and circumstances of property.

Now, is it not morally certain, that the testator intended to dispose of his will of this property, and is not that intention apparent upon the face of the will itself, especially when taken in connection with the state and circumstances of the property. He unquestionably had the legal title, and his intention, as it appears to me, might be as well disputed to dispose of any other part of his estate as this.

There is another intention manifested upon the face of this will, which would be frustrated by the success of this attempt on the part of the complainant; and that is to place the grand-

children on a footing of entire equality. It is perfectly clear, that the testator intended to give to each the same precise interest in his estate, in regard alike to quantity and quality, and to permit this arrangement to be disturbed, would be to defeat a cherished object of the testator.

The rule as assented by the Court of Appeals in the case of *McElfresh* vs. *Schley and Barr*, is, "that a man shall not take a benefit under a will, and at the same time defeat the provisions of the instrument," &c., and, as according to my view of this case, the complainant is now attempting, by this bill, to violate this rule, I should on this ground, if none other existed, refuse him relief.

[The decree in this case was affirmed on appeal.]