Mr. Justice Morris
delivered the opinion of the Court:
It is, of course, perfectly apparent that the contract which forms the basis of the suit is not binding upon Mrs. Isabel Weisel and Mrs. Marion Chew, unless previously to its execution they authorized their brother John M. Waters to enter into it for them, or subsequently thereto ratified and confirmed it' by their course of conduct. The burden of proof is upon the complainant to show clearly and satisfactorily and beyond reasonable doubt either such previous authority or such subsequent ratification; and naturally his testimony is mainly directed to that object. We have examined all the testimony with all the care and earnestness that we could bring to its consideration; and we have failed to find any satisfactory proof either of authority or of ratification.
In one of its most recent utterances on the subject of specific performance, the Supreme Court of the United States, by Mr. Justice Harlan, said:
“ Specific performance is not of absolute right. It rests entirely in judicial discretion, exercised, it is true, according to the settled principles of equity, and not arbitrarily or capriciously, yet always with reference to the facts of the particular case. Willard v. Tayloe, 8 Wall., 557; Marble Co. v. Ripley, 10 Wall., 339, 357; 1 Story’s Eq. Jur., Sec. 742; Seymour v. Delancey, 6 Johns. Ch., 222, 224. The question in cases of specific performance, Lord Eldon said, is not what the court must do, but what, under the circumstances, it may do, in the exercise of its discretion to grant or Withhold relief of that character. White v. Damon, 7 Ves., 30, 35 ; Radcliffe v. Warrington, 12 Ves., 326, 331. It should never be granted unless the terms of the agreement sought to be enforced are clearly proved, or where it is left in doubt whether the party against whom relief is asked in fact made *389 such an agreement. Colson v. Thompson, 2 Wheat., 336, 341; Carr v. Duvall, 14 Pet., 77, 83; Huddleston v. Briscoe, 11 Ves., 583, 591; Lanz v. McLaughlin, 14 Minn., 72; Waters v. Howard, 1 Md. Ch., 112, 116.”
That was a case, Hennessy v. Woolworth, 128 U. S., 438, not very unlike the present in its general features, where the controversy turned upon the question of the authority of an alleged agent which was denied by the supposed principal.
Tested by the rule here laid down, which is the logical result of all the previous authorities on the subject, the plaintiff in the present case has utterly failed to sustain his right to have specific performance. Indeed, in our opinion, the preponderance of testimony is decidedly in favor of the defendants.
That John M. Waters, when he made the contract of Feb. 27, 1890, believed that he had authority to act for those for whom he undertook to act, and that he gave the complainant so to understand, we may readily assume. But assumption of authority assuredly is no proof of authority; and he himself, both in his answer and in his testimony, denies that he had received any such authority or that he gave the complainant so to understand. And both Mrs. Weisel and Mrs. Chew positively deny that they gave any authority at any time to their brother to make the contract for them which he assumed to make. The explanation of John M. Waters is that he made the contract subject to ratification by the other heirs, of which he says that Dr. Ritchie was fully advised; and this whether true or not, is not wholly inconsistent with his general course of proceeding in the business. But whatever we may think of his action, it should not be permitted to affect the rights of the other defendants, unless it is shown that they sanctioned it. And we are of opinion that there is no sufficient legal evidence to show that they in any manner sanctioned it.
To overcome the positive denial of the answers, and the equally positive statements of the several defendants on the *390 witness stand, the complainant has not a single witness, and is compelled to rely upon “ circumstances,” or “ corroborating circumstances.” We find it rather difficult to appreciate the position assumed on behalf of the complainant in this regard, that “ corroborating circumstances ” are sufficient to prove his case without any witnesses. Facts and circumstances, as the basis of private right, do not prove themselves. They are required to be proved by witnesses. It is true that, when proved, they may outweigh the testimony of any number of witnesses. The case of The Southern Development Company v. Silva, 125 U. S., 247, cited on behalf of the appellee, only states the general and ordinary rule in equity that “unless these denials (of the answer) are disproved by evidence of greater weight than the testimony of one witness, or by that of one witness with corroborating circumstances, the complainant will not be entitled to a decree.” It is difficult to see how an answer in equity can be overcome merely by circumstances, without the testimony of any witness.
But what are these corroborating circumstances upon which the complainant relies? We have first the statement of Mrs. Weisel that, in September, 1889, she and her sister were willing to sell the property for $15,000, and urged the trustees to sell at that figure. It is scarcely a fair or reasonable inference from this fact, either taken alone or in connection with other circumstances, that they were willing to sell for that figure in February, 1890; or that in February, 1890, they authorized John M. Waters to bind them by contract in writing.
Another circumstance relied on is that, in the year 1875, by an instrument of writing executed for a special purpose, which seems long since to have come to an end, they authorized the trustees to sell the property under the will at public sale for $15,000, and at private sale at their discretion after consultation with the parties in interest. And it is argued that, because they were willing to sell at auction for $15,000, they were therefore willing to sell at private sale *391 for the same sum; and it is inferred that, because they were willing that the trustees should carry out the terms of the will in 1875, if they could get $15,000' for the property, they were therefore willing that John M. Waters should bind them in 1890 by written contract to sell to Dr. Louis W. Ritchie. We cannot acquiesce in the logic of this inference.
Sixteen letters were introduced in evidence by the complainant, constituting a correspondence between John M. Waters, or the firm of Joseph G. Waters and John M. Waters, and Percy Lee Waters, from January 7, 1890, to April 4, 1890, in which repeated mention was made of the desire of the heirs to sell the property for $15,000; and the statements contained in these letters are regarded as corroborating circumstances. But these letters are wholly'inadmissible as evidence against Isabel Weisel and Marion Chew, who knew nothing of them and are in no way connected with them. And it is difficult to see how statements made by Joseph G. Waters or John M. Waters, not shown to have been authorized by Isabel Weisel and Marion Chew, could be held to bind the latter, or to be any evidence whatever against them. We cannot give to such statements the force and effect of corroborating circumstances.
It is undoubtedly quite probable that when John M. Waters signed the contract with Dr. Ritchie he did so in the honest belief that he was justified in executing it, and that' all the heirs, except possibly Percy Lee Waters, were then ready and willing to sell for $15,000, and would ratify his contract; and, indeed, Mrs. Weisel and Mrs. Chew themselves testified that they had been so willing. But it is very plain that the sale which these latter desired was a sale by the two trustees under the will; and that, if they, ever authorized any contract to be made for them, it was to be a contract by the two trustees, and not one by John M. Waters alone. ■ Now, this may be a very immaterial thing. The selection of their agents to accomplish a result may be very unimportant, if the result is accomplished. It might have been the merest whim and caprice *392 on the part of these ladies to prefer the combined action of the two trustees rather than the individual action of one of them; but it was their undoubted right to select their agents for themselves; and no man has a right to assume to bind another by contract, even though the contract should be precisely such as the party desires. Whatever these two defendants may have wished and stated in regard to the sale of the property, it is very clear to us that they never, at any time, so far as the record discloses, authorized John M. Waters to make the contract for them with Dr. Ritchie which he assumed to make; and that, so far from ratifying that contract by any subsequent course of action on their part, they distinctly repudiated it. They may have done so in the hope of a higher price; and they probably did. But that it was their absolute right to do, unless they had legally bound themselves to the contract.
Instead of finding corroborating circumstances here to bind these defendants to the contract undertaken to be made for them, we find circumstances that would make it exceedingly improper to decree specific performance, except under compulsion of the clearest proof. We have a legal title outstanding in trustees, with a power of disposal of the property in a specified way; and we have a proceeding in equity for a sale for the purpose of partition. It is for the trustees to sell the property either under the will or under the decree of the court; and an attempt to enforce specific performance under a private contract might well be construed as an attempt to compel them to violate their trust.
But-there is another an.d an insuperable objection to the relief prayed for by the complainant in this case. The contract executed by John M. Waters, even if there were ample authority in him to execute it, and the proof of such authority were beyond dispute, is, in consequence of the vagueness and insufficiency of its terms, incapable of forming the basis for a decree of specific performance. It does not describe any property that can be identified without extraneous proof; or, if it does, the property is entirely different from *393 that mentioned in the bill of complaint, and there is a fatal variance between the allegation and the proof.
The bill of complaint describes certain property in Georgetown; the contract, if it describes any specific property at all, calls for property in the city of Washington. The bill of complaint seeks to compel the conveyance by the defendants to the complainant of lots 26, 27, 28, 29, 30, 31, 32 and 33, in square 19, in the city of Georgetown; the contract exhibited, which is under the caption of “Washington, D. C., 27th February, 1890,” specifies “lots 26, 27, 28, 29, 30. 31, 32 and 33, in square 19,” without stating where these lots and square are. Without the caption, the description of the property is meaningless; no one can tell from the paper itself where square 19 is to be found. With the caption, and if the caption be imported into the body of the contract, the property contracted for is in the city of Washington, and not in the city of Georgetown. Either the contract is insufficient to describe any certain piece of property, or there is a fatal variance between it and the allegations of the bill of complaint.
It is a well settled rule of equity, that a contract for the sale of lands, in order to be specifically enforced, must have all the elements of a valid contract under the Statute of Frauds, and must be complete in itself, certain in its terms, and sufficient to identify the property with reasonable accuracy. Preston v. Preston, 95 U. S., 200; Williams v. Morris, 95 U. S., 444; Purcell v. Miner, 4 Wall., 513. The contract in this case does not comply with the rule.
Were it not for this insufficiency of the contract, there might be ground to decree specific performance as against John M. Waters and his interest in the property. But .the insufficiency of the contract renders it improper to enforce it against any one of the defendants.
We are of opinion that the appellee, complainant in the court below, is not entitled to specific performance of the alleged contract; and that the decree of the court below is erroneous and should be reversed.
*394 And it is hereby accordingly reversed, with costs; and the cause is remanded to that court, with directions to enter a decree dismissing the bill.
On June 15, 1894, a motion was made by the appellee for a rehearing as to the defendant John M. Waters, upon the ground that the opinion in his favor rested upon a point not made in the answer of any of the defendants and not suggested either in the brief for the defendants or in the oral argument before the court.
In support of this motion it was urged by Mr. Worthington and Mr. Taggart for the appellee, that the contract sufficiently identified the square in which the lots sold were situated, and the following authorities were cited in a brief filed by them: Fry on Specific Performance, Secs. 325 to 329; Reed on Stat. of Frauds, Secs. 409 to 413; Pursell v. Minor, 4 Wall., 513; Preston v. Preston, 95 U. S., 200; Williams v. Morris, 95 U. S., 444; Hurley v. Brown, 98 Mass., 545; Scanlon v. Geddes, 112 Mass., 115 ; Meade v. Parker, 115 Mass.; Colerick v. Hooker, 3 Ind., 316; Waring v. Ayers, 40 N. Y., 361; Bacon v. Leslie, 50 Kan., 494; Preble v. Abrahams, 88 Cal., 245 ; Egleston v. Wagner, 46 Mich., 618; Ryan v. U. S., 136 U. S., 82; Patch v. White, 117 U. S., 210; Gilmer v. Stone, 120 U. S., 586.
The motion for a rehearing was, on October 1, 1894, granted, but the reargument had not been heard at the time this volume went to press.