WILLIAM H. RICKARD and AMANDA RICKARD,
His Wife,

*vs.*

JOHN E. NEFF and LELIA S. NEFF, His Wife.

*Specific execution of contracts: not a matter of right; equitable
considerations; proof of contract.*

Specific execution of contracts by courts of equity is not a
matter of absolute right in the party applying, but of sound dis-
cretion in the court, to be exercised upon consideration of all
the circumstances of each particular case.                    p. 94

It does not follow, as a matter of course, that because the
legal obligation under a contract may be perfect that, therefore,
the equitable power of a court will be exercised to compel or
effect its execution.                                         p. 95

In every case the question is, whether the exercise of the
power is called for to subserve the ends of justice; for, unless
the court is satisfied that the application is fair, just and rea-
sonable, it will not interfere.                               p. 95

Where the defendants, to defeat the bill, set up another and
different contract with the complainants, the burden of proof is
upon the defendants to establish such contract by clear and sat-
isfactory evidence.                                          p. 96

*Decided January 12th, 1917.*

Appeal from the Circuit Court for Worcester County. In
Equity. (JONES, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*John W. Staton* and *George M. Upshur* (with whom were *Upshur & Upshur* on the brief), for the appellants.

*William F. Johnson* and *Frank S. Tavener,* for the appellees.

BURKE, J., delivered the opinion of the Court.

John E. Neff and Lelia S. Neff, his wife, the appellees on this record, filed a bill in the Circuit Court for Worcester County against William H. Rickard and Amanda Rickard, his wife, in which they asked that a decree be passed for the sale of a tract of land called "Seaside Rest" situated in that county, and for the distribution of the proceeds of sale between the complainant, John E. Neff, and William H. Rickard, one of the defendants. The bill alleged that John E. Neff and William H. Rickard were seized in fee simple as tenants in common, each owning an undivided one-half interest therein, of a tract of land, called "Seaside Rest" situated at or near Sinepuxent Bay, in Worcester County, the one-undivided one-half interest of John E. Neff having been conveyed to him by a deed from John L. Wisman and wife, dated August 26th, 1911, and recorded among the Land Records of Worcester County, and that the lien reserved for unpaid purchase money in said deed had been released and the purchase money paid; that the one-half undivided interest of William H. Rickard in said land had been acquired by him by a deed from Joseph F. Wisman and wife, dated August 27, 1913, and recorded among the Land Records of Worcester County, and that the lien reserved for unpaid purchase money in said deed had been released and the purchase money paid. The bill further alleged that said real estate was not susceptible of partition without material loss and injury to the parties entitled to interests as above stated,

and that in order to make division of said interests it would
be necessary to sell the property, and divide the proceeds of
the sale between the parties according to their respective in-
terests. The relief prayed for was:

"1.   That a decree be passed for the sale of the prop-
erty; and

"2.   That the proceeds of said sale may be dis-
tributed between your Orator, John E. Neff, and the
said William H. Rickard according to their respect-
ive rights and interests; and for other and further
relief."

The defendants answered the bill. Their answer denied
that the plaintiff, John E. Neff, and the defendant, William
H. Rickard, are seized in fee simple as tenants in common,
each in an undivided one-half interest therein, of the tract of
land mentioned and referred to in the bill; it admitted that
an undivided one-half interest in said land was conveyed to
John E. Neff by the deed from John L. Wisman and wife,
dated August 26, 1911, referred to in the bill, and that the
lien reserved by the deed for the unpaid purchase money had
been released and the purchase money paid; it further ad-
mitted that a one-half undivided interest in the land was
acquired by William H. Rickard from Joseph F. Wisman
by deed dated the 27th of August, 1913, and that the lien
reserved by the deed for unpaid purchase money had been
released and the purchase money paid, as alleged in the bill.
The answer then set up the following contract:

"*This Contract,* Made this 21st day of August, 1913,
by & between W. H. Rickard of Harrisonburg, Va., of
first part and John E. Neff of Shenandoah County,
Virginia, of second part: Witnesseth, That for & in
consideration of one dollar in hand paid the receipt
of which is hereby acknowledged by first party, and
the further considerations as hereinafter set out that
will accrue to both parties, first party does this day
sell unto second party one-half undivided interest in
the farm known as the Jonathan Shaeffer or Starke

farm, containing 611 acres, more or less, situated about 8 miles south of Lexington, Va., on the Plank Road, together with all its belongings and easements as set out in the deed that is to be executed to the said Rickard by W. E. L. Stark & wife on or about Sept. 2nd, 1913, upon the following terms & conditions, to wit, second party is to execute a deed of general warranty to first party of his ½ undivided interest in a farm known as Seaside Rest, situated near Newark, Md., containing about 360 acres more or less, being the same farm deeded to said J. E. Neff & Joseph F. Wisman by J. L. Wisman & wife and formerly owned by Gordon Gones, known as Seaside Rest, free of encumbrance, said Neff obligating himself to pay all obligations upon his ½ interest in said property as is understood between himself & Joseph Wisman & is to execute his notes or bonds to first party for $9,250.00, nine thousand two hundred & fifty dollars, with interest from Sept. 2nd, 1913, said $9,250.00 to be evidenced by 4 bonds of $2,312.25/100 dollars, two thousand three hundred and 25/100 dollars, dated Sept. 2, 1913, and due 3 years after date, interest payable annually; second party agrees to unite in the contract that first party has made with C. E. Rice as tenant on said farm for the ensuing year. The bonds above referred to are to be recited in deed from first to second party as vendor's bonds retaining a lien upon the interest conveyed. This contract is subject to Rickard securing a deed with satisfactory title to said 611 acres from W. E. L. Stark, with whom he has a contract in writing to deliver said deed about Sept. 2, 1913, possession of all the property herein mentioned is to be given Sept. 2, 1913, subject however to the present tenant's rights on said properties.

"Witness the following signatures this 21st day of August, 1913.

"W. H. Rickard.   (Seal)<br>
"J. E. Neff.   .(Seal)"

The answer averred that William H. Rickard did secure a deed with satisfactory title to said land in Virginia from said W. E. L. Stark and wife and that said Rickard had performed all the requirements of said agreement on his part to be performed, and had tendered himself ready and willing to convey to said Neff the undivided one-half interest in said Jonathan Shaeffer farm in the State of Virginia, but that the said John E. Neff has refused and still refuses to convey to the said William H. Rickard his undivided one-half interest in said tract of land in Worcester County, called "Seaside Rest," and likewise has refused and still refuses to execute to the said William H. Rickard his notes or bonds for the sum of nine thousand two hundred and fifty dollars. The defendants prayed "that the said agreement may be specifically enforced, and that the said John E. Neff may be decreed to convey unto the said William H. Rickard his aforesaid interest in said land called "Seaside Rest," and to execute unto the said William H. Rickard the said notes or bonds for nine thousand two hundred and fifty dollars in accordance with said agreement; and that in the event the said John E. Neff, who is a resident of the State of Virginia, and resides beyond the jurisdiction of this Court, should refuse or neglect to obey the decree of this Court specifically enforcing said contract against him, that this Court appoint a trustee to convey to the said William H. Rickard, the undivided one-half interest of the said John E. Neff in the said land called "Seaside Rest"; whereupon, after the execution by the said John E. Neff to the said William H. Rickard of the aforesaid notes or bonds for nine thousand two hundred and fifty dollars and interest, as provided in said contract, the said William H. Rickard tenders himself ready, willing and able to convey to the said John E. Neff an undivided one-half interest in the aforesaid farm in the State of Virginia called the Jonathan Shaeffer farm, in accordance with the terms mentioned in said agreement."

The answer did not deny the allegation of the bill that the land was not susceptible of division without loss and injury to the parties in interest. . The allegation, however, was fully supported by the evidence of witnesses who testified in the case. A replication was filed, and testimony was taken in Maryland and Virginia by the respective parties upon the issues of fact raised by the pleadings. The case was submitted for decision to the lower Court, after argument, and that Court by its decree, dated September 5, 1916, dismissed the defendants' cross-bill which asked for the specific performance of the contract of August 21, 1913, set up in the answer, and decreed that the real estate (Seaside Rest) mentioned in the proceedings be sold, and appointed William F. Johnson and George M. Upshur, trustees, to make the sale. The appeal before us was taken by the defendants from that decree.

Upon the allegations of the bill and the admissions in the answer, and the proof, it must be admitted that the decree appealed from was properly passed, unless the record shows that it was the duty of the Court below to have specifically enforced the contract set up and relied upon by the defendants. Apart from that contract, the case is a plain one for a sale under Section 137, Article 16 of the Code. The single question is this: Does the record disclose a state of facts which required the Court, under the well settled rules relating to specific performance, to have enforced the contract set up by the defendants? The principles which control the Court in the granting or withholding the decree for specific performance of contracts are so well established as to render it unnecessary to cite many cases in which they have been announced. We will state the general principles as announced in two cases in this Court. In *Semmes* v. *Worthington,* 38 Md. 298, JUDGE ALVEY said: "Specific execution of contracts by courts of equity is not a matter of absolute right in the party applying, but of sound discretion in the Court, to be exercised upon consideration of all the circum-

stances of each particular case. The Court will be controlled, of course, in the exercise of its discretion, by the established doctrines and settled principles upon the subject; but it does not follow, as matter of course, that because the legal obligation under the contract may be perfect, therefore the equitable power of the Court will be exercised to compel or effect specific execution. In every case, the question is, whether the exercise of the power is called for to subserve the ends of justice; and unless the Court is satisfied that the application to it, for this extraordinary assistance, is fair, just and reasonable, in every respect, it will refuse to interfere, and leave the party to other remedies for redress. *Waters* v. *Howard,* 1 Md. Ch. 112, and 8 Gill, 262; 2 *Story's Eq.,* secs. 767, 770; *Seymour* v. *Delancey,* 6 John. Ch. 222; *Willard* v. *Tayloe,* 8 Wall. 557."

We said in *Horner* v. *Woodland,* 88 Md. 511: "The principles regulating the exercise by courts of equity of their power to compel the specific performance of contracts are well settled. Specific performance is not a matter of right in the litigant but it is one of sound judicial discretion controlled by established principles of equity, and it will be granted or withheld by the Court upon a consideration of all the circumstances of each particular case. The contract sought to be enforced must be certain and definite in all its provisions, and fair and mutual in its terms, and must be so clearly proven as to satisfy the Court that it constitutes the actual agreement between the parties. If any of these ingredients are wanting the specific performance will not be decreed."

We now turn to the consideration of the facts contained in the record. Do they meet the requirements, as defined by the cases to which we have referred? The original contract, together with certain original letters admitted to be in the handwriting of John E. Neff, have been produced before this Court. The contract is written with pen and ink, and the name of W. H. Rickard and the word seal following his

name are written with pen and ink. The name of J. E. Neff and the seal opposite his name are written with lead pencil. There is seldom found in any record so many flat and irreconcilable conflicts of evidence upon material and important questions as are found in this record, and upon a careful consideration of the whole record and of all the circumstances it is, to say the least, a matter of grave doubt as to whether John E. Neff ever signed the contract, and where a doubt upon a vital fact in the case exists specific performance will not be granted.

This doubt as to the genuineness of the signature of John E. Neff arises from a number of facts and circumstances. The paper is not witnessed and, according to the testimony of Rickard, no one was present when it was prepared and signed. Neff positively denies the signature and denies that he ever entered into such a contract. He further swears that he never saw the original contract until after the filing of the answer in this case. That he first saw it at Snow Hill where it had been filed before the examiner as one of the exhibits by Rickard. The burden was upon the defendants to establish the contract by clear and satisfactory evidence. The evidence relied upon for this purpose is that of William H. Rickard and Ludwig Hirsh, and certain acts of Neff and certain letters of his introduced in evidence. An examination of this evidence has convinced us that it is wholly insufficient to discharge the burden which the law casts upon the defendants. Upon a question of fact, such as we now have before us, no useful purpose can be subserved by a mere recapitulation of the testimony, and we will deal with its general purport and effect as it relates to the essential questions in issue. The testimony of William H. Rickard in his examination in chief, briefly and substantially stated as to the execution of the contract was as follows: He was shown the contract and testified it was signed by himself and John E. Neff, and that Neff signed the paper in his presence. On cross-examination he testified that he retained the original

and sent Neff a copy; that he wrote the contract and signed
it in the writing room of Kavanaugh's Hotel in Harrison-
burg, Virginia, and gave the circumstances under which it
was prepared and signed by himself and Neff. He testified
that on the 20th of August, 1913, he and Neff went to the
Stark farm, stayed there all night, and returned to Harrison-
burg on the afternoon of the 21st, where he prepared and
signed the contract. The date at the beginning of the con-
tract was the 21st of August, and at its conclusion was
August 23rd. This latter date was changed to the 21st, and
he gave this explanation as to the change of dates: "33 q.
Will you please examine the contract between you and J. E.
Neff with reference to the sale of his interest in Seaside
Rest marked exhibit 'W. H. R., No. 1,' and state what were
the facts with reference to the dates said contract bears, both
at the top and at the end of the same? A. The 21st at the
top is the day the contract was drawn and signed by myself.
As I got to the last of the contract in preparing the contract,
Mr. Neff suggested inasmuch as he had been negotiating with
Mr. Wisman that he wanted to give him a last chance to go
in on it, and he did not think he ought to sign the contract
until after he had seen Mr. Wisman, and as he expected to
see him on the 22nd he would rather not sign until the 23rd,
and he would like to have the date that way. Without much
consideration it was concluded and date was written the 23rd,
the date of the signatures, but before signing we both agreed
it would be better to have the date the same at the top, hence
the date was changed to the 21st. I signed on the 21st and
Mr. Neff on the afternoon of the 22nd."

Mr. Rickard then prepared another contract between him-
self, Joseph F. Wisman, and John E. Neff, called in the
testimony "the tripartite" agreement. Neff signed this agree-
ment, and he and Rickard took the train for Edinburg to
see Mr. Wisman, who lived a short distance from that place.
Mr. Wisman had retired for the night when they reached
his home, and they did not see him until the following morn-

ing, when the tripartite agreement, signed by Neff, who was anxious to have Wisman go in with him in the purchase, was fully discussed. This agreement was not produced in this case, and we do not know its exact terms. Rickard testified that Neff took possession of this agreement, but the preponderance of the evidence is to the effect that he himself had possession of the paper and carried it away with him. Mr. Wisman declined to sign the contract, but agreed to go with his son and look at the property, and it was agreed that the matter should be left open until this had been done. Rickard and Neff then took the train to return to their homes. Rickard testified that Neff signed the contract in lead pencil on the train somewhere between Edinburg and New Market on August 22nd, 1913.

There can be no doubt that Mr. Neff signed this tripartite agreement, and that he was ready to become a purchaser, with Mr. Wisman, of an interest in the farm upon the terms stated in the agreement, whatever they were. Nor can there be any doubt that it was fully understood between himself and Rickard that the agreement was not to become operative unless it was signed by Wisman. The inference is strong that Neff would not have agreed to purchase an interest in the farm unless Wisman joined with him. If Neff had agreed to the terms of the contract filed in this case, it is strange indeed, that neither he nor Rickard mentioned that fact to Mr. Wisman. It was the most natural thing under the circumstances for them to have done, and it is stranger still that Neff should have signed the contract on the train after the matter by common consent had been left open for action by Mr. Wisman. There are facts in the testimony of Mr. Wisman, who was a disinterested witness and who appears to be a thoroughly responsible man, which strongly impeach the credibility of the testimony of Mr. Rickard. It is unnecessary to point out all the conflicts between the testimony of Wisman and Rickard. Two instances will be sufficient. Mr. Wisman testified to two conversations he had with

Rickard about the signing of the agreement. In the first of these he said that Rickard told him that Neff had taken the agreement to his home and returned it to him; and in the second he said that Neff had signed the agreement at Edinburg. Mr. Brumback testified that he heard Mr. Rickard tell Wisman that Mr. Neff took the agreement "home with him, and signed it and returned it to me the next day."

Mr. Neff appears to be a man of limited education. He admitted signing the tripartite agreement and said: "I did not want to sign it, but he (Rickard) said, 'John, you sign it, and if Wisman does not go in it is not binding,' so I signed it. He said that if I signed it it might cause Joe (Mr. Wisman) to take a part interest"; that he told Rickard he could not go in "unless my wife consented because her money mostly was in the place." In his account of the interview at his home with Rickard and Neff, Mr. Wisman testified: "Mr. Neff says, 'I'll not go into it unless he, Wisman, is in it—unless he is in it, and I must also consult my wife for it is her money.'" Mr. Rickard replied: "This thing is not binding unless Mr. Wisman signs it." It is difficult to believe in the face of such evidence that Neff had already agreed to the terms of the contract of August 21st, and that he actually signed the same within a few hours thereafter. The letters of the defendant, Neff, we do not regard as satisfactory evidence of the genuineness of his signature to the contract. Nor do they contain statements from which it ought to be held, in an action of his kind, that he did sign the contract of August 21st, and there is nothing in any of the letters inconsistent with his testimony that in writing the letters he had in mind the tripartite agreement, which he states was the only one he ever signed. These letters may be said to furnish the basis for a conclusion that Neff had signed *a contract* to purchase an interest in the farm. They may constitute evidence of *some agreement,* but they are not clear and unequivocal evidence of the *particular agreement* set up in the answer of the defendants. In view of the facts and

circumstances to which we have alluded, we are not prepared to accept as final and conclusive the testimony of Ludwig Hirsch. There are abundant facts in the record to warrant the comment made by the lower Court on his evidence: "The testimony of Ludwig Hirsch as to the identity of the paper is far from being sufficient to convince us that he was ever sufficiently familiar with any contract to give dependable testimony with relation thereto. He was brought to Maryland, the contract in suit was shown him for examination, written in the handwriting of William H. Rickard, and within a very short time he was cross-examined in Virginia with reference to the same paper and testified that "the body of the paper was typewritten."

As the evidence, in our opinion, fails to establish clearly the contract relied upon by the defendants, the Court committed no error in refusing to enforce it, and as the record presented a proper case for the sale of the property under the provisions of the Code, the decree directing the sale will be affirmed.

*Decree affirmed, with costs.*